IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 10, 2002 Session

## VICKIE BARA, ET AL. v. CLARKSVILLE MEMORIAL HEALTH SYSTEMS, INC., d/b/a CLARKSVILLE MEMORIAL HOSPITAL, ET AL.

**Appeal from the Circuit Court for Montgomery County**
**No. C12-852     James E. Walton, Judge**

———————————————

**No.  M2001-00682-COA-R3-CV - Filed September 12, 2002**

———————————————

Parents of deceased child sued Clarksville Memorial Hospital and Dr. David Miller for the death of their child.  They alleged this death occurred due to Defendants' mis-diagnosis of their daughter's injuries following an automobile accident and subsequent incorrect and negligent treatment**.**  The jury returned a verdict for Defendants.  Plaintiffs now appeal alleging two points of error in the jury instructions; (1) that it was error to charge the jury that Plaintiffs must prove causation to a reasonable degree of medical certainty and; (2) that it was error to charge the jury that they must find the child's death to be reasonably foreseeable.  We find that the jury instructions on reasonable degree of medical certainty and foreseeability were incorrect statements of the law, confusing to the jury, and more probably than not, affected the jury's verdict.  We thus reverse the judgment and remand for a new trial as to Defendant Miller.  We affirm the judgment in favor of Clarksville Memorial Hospital.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed and Remanded as to Defendant Dr. Miller**
**Affirmed and Remanded as to Defendant Clarksville Memorial Hospital**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J. and IRVIN H. KILCREASE, JR., SP. J., joined.

Joe Bednarz, Sr. and Joe Bednarz, Jr., Nashville, Tennessee, for the appellants, Vickie Bara and John Paul Bara.

Wayne L. Robbins, Jr., Nashville, Tennessee, for the defendant, David S. Miller, M.D.

Robert L. Trentham and G. Brian Jackson, Nashville, Tennessee, for the appellee, Clarksville Memorial Hospital.

**OPINION**

Sofia Bara, deceased, was in an auto accident on November 30, 1997. She was taken to the emergency room at Clarksville Memorial Hospital where she was examined by an emergency room physician. The ER physician ordered a CT scan of her abdomen and called in Defendant, surgeon Dr. David Miller, for consultation regarding the possibility of internal injuries. Dr. Miller viewed the CT scan and examined Sofia. He then admitted her to the hospital for observation at around 2:00 a.m. on the night of the accident.

The CT scan showed some fluid around her liver, but the fluid appeared to Dr. Miller to be fatty tissue, as Sofia was quite overweight. He saw her again around 2:00 p.m. the following afternoon, at which time she was drinking and asking for food; however, he did not perform a physical examination at that time. He spoke with her, and after checking her vital signs and talking with her mother, he stated that it would be fine for her to go home. However, Dr. Miller did not discharge her at that time, nor did he provide any discharge instruction. Sofia also had an orthopaedic injury and still needed to be seen by her orthopaedic surgeon prior to any discharge. There was a question at trial as to who actually discharged Sofia.

She was discharged at around 7:20 p.m. on the evening of November 30, 1997, and sent home with no discharge instructions regarding a possible internal injury or the potential for internal bleeding. She continued to feel ill and, on the night of December 1, was found unconscious. She died before she could be transported to the hospital. Her parents, Vickie and John Paul Bara, brought suit against Dr. David Miller and Clarksville Memorial Hospital for malpractice.

The case was tried to a jury in October 2000, and the jury rendered a verdict finding no fault on the part of either Defendant. Plaintiffs appeal the verdict asserting that (1) the jury was incorrectly charged that Plaintiffs must prove causation to a reasonable degree of medical certainty, (2) the jury was incorrectly charged that Plaintiffs had the burden of proving by a preponderance of the evidence that the death of Sofia Bara was reasonably foreseeable, and (3) the jury verdict was against the weight of the evidence. We agree that as to Dr. Miller the jury was incorrectly charged on causation and foreseeability and find that these errors likely affected the outcome of the trial. The judgment is reversed as to Dr. Miller and the case remanded for a new trial.

STANDARD OF REVIEW

The necessity of jury instructions based on a clear and sound exposition of the law in order for a jury verdict predicated upon those instructions to stand is a long standing principle of Tennessee law. "The parties are entitled to a clear and consistent charge, as well as a correct one, that justice may be reached." *Citizens' Street Railroad Co. v. Shepherd*, 64 S.W. 710, 711 (Tenn. 1901). A verdict will be reversed if it can be shown that an instruction contains an inaccurate statement of the law or is confusing and, considering the charge of the court as a whole, that the error was not harmless, i.e. that the instruction more likely than not affected the outcome of the trial. *Cardwell v. Golden*, 621 S.W.2d 774 (Tenn. Ct. App. 1981); *Helms v. Weaver*, 770 S.W.2d 552 (Tenn. Ct. App. 1989); *Whitsett v. McCort,* 1990 Tenn. App. Lexis 611, at *20 (Tenn. Ct. App. August 28, 1990).

The real question on this issue, then, is whether the error should be considered harmless. . . . Tenn. R. App. Proc. 36(b) states that a judgment should not be set aside unless, considering the whole record, the error more probably than not affected the judgment or would result in prejudice to the judicial process. Our courts have held that in order to amount to reversible error it must appear that the jury was mislead by the erroneous charge.

*Carney v. Coca-Cola Bottling Works of Tullahoma*, 856 S.W.2d 147, 150 (Tenn. Ct. App. 1993) (citations omitted). This Court thoroughly analyzed the reasoning behind this requirement for accuracy in jury instructions in *Ladd v. Honda Motor Co., LTD*, 939 S.W.2d 83 (Tenn. Ct. App. 1996).

Juries have the exclusive duty to decide all disputed questions of fact submitted to them based on the law as explained by the trial court. Thus, the soundness of every jury verdict rests on the fairness and accuracy of the trial court's instruction. Since the instructions are the sole source of the legal principles needed to guide the jury's deliberations, trial courts must give substantially accurate instructions concerning the law applicable to the matters at issue.

Jury instructions need not be perfect in every detail. A single erroneous statement will not necessarily undermine otherwise proper instructions that, on the whole, fairly define the issues and do not mislead the jury.

Instructions must be viewed as a whole, and the challenged portion of the instructions should be considered in light of its context. An erroneous instruction will not be considered reversible error if the trial court explains or corrects it in other portions of the charge.

Juries are generally composed of persons who do not have formal legal training. Accordingly, a trial court's instructions should be couched in plain terms that lay persons can readily understand. It also follows that appellate courts must view the challenged instructions not through the practiced eyes of a judge but rather through the eyes of an average lay juror.

*Ladd*, 939 S.W.2d at 93-94 (citations omitted).

THE "REASONABLE DEGREE OF MEDICAL CERTAINTY" QUAGMIRE

To prevail in a medical malpractice action, Plaintiffs must present expert evidence (1) establishing the applicable standard of care, (2) demonstrating that Defendant's conduct fell below that standard of care and, (3) that Defendant's conduct was a proximate cause of injuries which would not otherwise have occurred. Tenn. Code Ann. § 29-26-115(a) (1980); *Moon v. St. Thomas*

*Hospital*, 983 S.W.2d 225, 229 (Tenn. 1998) and *White v. Vanderbilt University*, 21 S.W.3d 215, 226 (Tenn. Ct. App. 1999).

There was ample medical expert testimony introduced in the case under which a verdict either for the plaintiffs or for the defendant Dr. Miller would be unassailable on appeal, assuming a correct charge of the law to the jury.

In examining each of the medical experts, able counsel for all parties did what prudence demanded and when asking the experts' opinion on any issue intoned the standard incantation that the doctor base his opinion upon "a reasonable degree of medical certainty."

The continued usage of these "magic words" has come under intense academic scrutiny over the past decade and the near universal conclusions drawn are somewhat startling. The Genesis and Evolution of Legal Uncertainty About 'Reasonable Medical Certainty' " *Jeff L. Lewin*, 57 Md. L. Rev. 380 (1998); "Dissecting Missouri's Requirement of 'Reasonable Medical Certainty' " *Glenn E. Bradford*, 57 Journal of Missouri Bar, 136 (May 2001).

In his exhaustive and heavily foot-noted 66 page article published in 1998, Professor Jeff L. Lewin observes:

> The universal use of the phrase 'reasonable medical certainty,' and the importance that some courts attach to this phrase, cannot be explained by its intrinsic meaning, for the phrase has no readily apparent meaning. The very notion of 'reasonable certainty' is almost an oxymoron, because the adjective 'reasonable' qualifies and essentially negates the absolute implications of the noun 'certainty.' Insertion of the adjective 'medical' does not reduce the tension between 'reasonable' and 'certainty' for the concept of certainty is just as elusive in medicine as in other scientific disciplines, and perhaps more so.

57 Md.L.Review 380, 400-401 Jeff L. Lewin 1998.

According to Lewin and Bradford, the phrase "reasonable medical certainty" originated in Illinois sometime between 1915 and 1930 and spread to at least 22 other jurisdictions between 1940 and 1960. Mr. Bradford observes:

> Given the broad popular usage and acceptance of the concept of 'reasonable medical certainty,' it would be expected that the courts have given the phrase a precise and definite meaning. On the contrary, appellate opinions seem to use the phrase 'reasonable medical certainty' as if its meaning were self evident.

57 Journal of Missouri Bar, 136 (Glenn E. Bradford 2001).

Tennessee seems to have picked up this language in *Nashville C & St. L Railway v. Reeves*, 157 S.W.2d 851 (Tenn. Ct. App. 1941) in a case dealing with the admissibility of medical evidence as to the permanency of an injury.

Delving further into the dicta involving these "magic words" as a pre-requisite to the admissibility of expert testimony is not necessary to a decision in this case. We are dealing here with the charge to the jury in a case where each of the doctors used the "magic words" and the trial judge admitted into evidence all of their testimony for consideration by the jury.[1]

## EXPERT TESTIMONY AS TO PRE-DEATH EVENTS

The accident in issue was a one car accident that occurred in the evening hours of November 30, 1997. Sofia Bara was driving her father's car accompanied by her brother Michael and others. It had been raining and the pavement was wet. She lost control of the car and struck a tree causing injury to herself and minor injuries to the other occupants of the car. Both Sofia and her brother Michael were wearing their seatbelts. Sofia was taken to the emergency room at Clarksville Memorial Hospital and first treated by Dr. Doty who observed symptoms of pain in her abdomen and in her left foot. She also had a seatbelt mark with bruising in the abdominal area where the seatbelt had been strapped around her. Sofia was obese weighing between 240 and 250 pounds and Dr. Doty ordered a CAT scan to search for internal injuries. The defendant Dr. Miller, a general surgeon, was called into the emergency room and examined the films from the CT scan which were unremarkable except for disclosing some fluid in the area of the liver. Dr. Miller conferred by telephone with the radiologist Dr. Doug Hong. Dr. Hong in his report on the results of the CT scan had referred to the fluid he found as "ascites." He explained:

---

[1] It is respectfully suggested that Tennessee might do well to follow the Supreme Court of Montana wherein it held:

> We agree with BN that the answer given by Dr. Schimpff is not strong and clear. This Court has generally adhered to a test of "reasonable medical certainty" as the basis for admissibility although we do not require of doctors the same strictness in testifying that was once required. See *Stordahl v. Rush Implement Company* (1966), 148 Mont. 13, 417 P.2d 95. Although we still formally adhere to a "reasonable medical certainty" standard, the term is not well understood by the medical profession. Little, if anything, is "certain" in science. The term was adopted in law to assure that testimony received by the fact finder was not merely conjectural but rather was sufficiently probative to be reliable. We are striving for, what in fact, is a probability rather than a possibility. Our evidentiary standards are satisfied if medical testimony is based upon an opinion that it is "more likely than not." We find that Dr. Schimpff's testimony regarding "permanency" was sufficient for the jury to find it probable that Dallas' present symptomatic condition would not improve during his lifetime.

*Dallas v. Burlington Northern, Inc.*, 689 P.2d 273, 277 (Mont. 1984).

Thus did Montana allow the "magic words" to disappear back into the abyss of uncertainty from whence they came.

When we said ascites, doctors understand usually this means fluid in the abdomen that include blood or any kind of fluid, even urine or true ascitic fluid or even bile all look alike on the CT scan, and so that's what I meant on my report when I said ascites that means fluid inside of the abdomen.

Neither Dr. Miller nor Dr. Hong observed any laceration of the liver discernable from the CT scan. When asked for the possible sources of this free fluid Dr. Hong answered:

If you - - if we confine possible source of fluid - - I mean confine the injury as far as injury is concerned, it could be injury from liver or spleen or it could be injury to the gallbladder. It could be injury to the intestine. Also it could be injury to the kidney or ureter.

Dr. Miller opined that the substance disclosed by the CT scan was in fact fatty tissue around the liver but nonetheless admitted her to the hospital around 2:00 a.m. for continued observation.

She also had an injury to her foot and an orthopaedic specialist, Dr. Steven Salyers, was called in to treat her for the foot injury. After observing Sofia, Dr. Salyers diagnosed a mid-foot injury and ordered a CT scan to rule out a more ominous dislocation pattern, together with an ice pack for her left foot and crutches to hold down weight bearing. After this, Dr. Salyers testified:

I received a phone call from one of the nurses on the floor, and she told me that Dr. Miller had transferred Miss Bara to my service. And I told her that I did not accept that patient in transfer, that Dr. Miller had not spoken to me and arranged ahead of time for me to accept the patient; and that if it was only the orthopaedic condition that was being treated, that the patient would not have even been admitted to the hospital because it was a relatively minor foot fracture that we were going to investigate further to rule out if it was a more significant injury. But if the foot injury had been her only injury, she would not have been admitted to the hospital and I did not feel it was appropriate for her to be transferred to my service.
My motivation, more than anything, probably, was I didn't want to dictate the discharge summary. I didn't want to do the orders. And it was a - - I did not agree to accept that patient on my service.

Sofia was seen again by Dr. Miller at about 2:00 in the afternoon when he observed no visual signs of distress and discussed with her mother possible discharge from the hospital. About 7:00 p.m. that same afternoon Sofia was discharged from the hospital and went home, though the record is unclear as to who actually authorized her discharge.

Sofia Bara died about 10:00 p.m. December 1, 1997 either at her home or en route to the hospital.

<u>THE AUTOPSY RESULTS</u>

Dr. Charles W. Harlan, who performed the autopsy on Sofia Bara, testified that the hospital record indicated she came into the hospital following an automobile accident shortly after midnight on November 30 and was discharged from the hospital at approximately 7:00 p.m. on November 30. She returned to the hospital at approximately 10:00 on the evening of December 1, 1997, at which time she had already died.

Dr. Harlan testified that he found a relatively small laceration of the liver and approximately 2000 cc's of blood in the peritoneal cavity (commonly called the belly). He opined that she bled to death internally from the laceration of the liver during the period between the accident in the very early hours of November 30, 1997 and 10:00 p.m. on December 1, 1997.

<u>EXPERT TRIAL TESTIMONY ON MALPRACTICE</u>

There is little to be gained, under the circumstances, in detailing the expert medical testimony at trial relative to standard of care, deviation from standard of care and causation. It suffices to say that there is expert medical testimony establishing the standard of care and that Dr. Miller deviated from that standard when, knowing that the substance evidenced by the CT scan could be blood, he allowed Sofia to be discharged from the hospital too quickly and without ascertaining, for certain, that the substance on the CT scan was in fact fatty tissue and not blood and further, in not giving detailed discharge instructions relative to the possibility of internal bleeding.

There was likewise ample testimony for the defense as to the applicable standard of care and that Dr. Miller did not deviate therefrom and that no action or inaction by Dr. Miller proximately caused the demise of Sofia Bara.

Thus, we have typical questions of fact to be resolved by the jury under proper instructions as to the law by the court.

<u>THE INSTRUCTIONS GIVEN BY THE TRIAL COURT ESSENTIALLY FOLLOW THE TENNESSEE PATTERN CIVIL JURY INSTRUCTIONS WITH TWO CRITICAL EXCEPTIONS, THE FIRST INVOLVING "REASONABLE DEGREE OF MEDICAL CERTAINTY" AND THE SECOND INVOLVING "FORESEEABILITY OF DEATH" RATHER THAN GENERAL FORESEEABILITY OF INJURY</u>.

Over the objections of Plaintiffs, the trial court charged the jury in accordance with the defendant's special request number nine which asserted "in order for you to find that the injuries and/or death of Ms. Bara were proximately caused by the negligence of any defendant, the plaintiffs must have proven causation to a reasonable degree of medical certainty."

The actual charge embodying this special request provides: "Proof of causation in a medical malpractice case cannot rest on conjecture. The mere possibility of such causation is not enough to

sustain the plaintiff's burden of proof. In order for you to find that the injuries and/or death of Ms. Bara were proximately caused by the negligence of any defendant, the plaintiffs must have proven that causation to a reasonable degree of medical certainty."

Assuming that such a charge to the jury was proper, the same glaring deficiency confronts the jury as has confronted the bench and bar for seventy years. Nobody undertakes to define the meaning of the term. Prior to incorporating this special request number nine into the charge, the judge has just finished charging the jury that Plaintiffs have the burden of proving, by a preponderance of the evidence, all facts necessary to prove fault on the part of Defendants. Then the court specifically defines preponderance of the evidence to mean "more likely true than not." Then it has charged that if the negligence of a party was "a legal cause of the injury or damage" that party is at fault. Thus, the two time honored elements lack of ordinary care and legal (proximate) cause have been correctly charged under a "preponderance of the evidence" requirement. Then on the heels of these imminently correct instructions the jury is told that "proof of causation" (cause in fact <u>and</u> proximate cause?) must be proven, not by a preponderance of the evidence, but "to a reasonable degree of medical certainty."

This is the precise bullet that the trial court correctly dodged in *Miller v. Choo Choo Partners, L.P.*, 73 S.W.3d 897 (Tenn. Ct. App. 2001). When the defendant challenged the trial court's refusal to charge the jury as to this "reasonable certainty" element, Judge Susano, for the majority in the Eastern Section of the Court of Appeals, countered:

> The defendant's proposed instruction regarding the requirement that expert testimony on causation be "reasonably certain" embodies a correct principle of law. However, we do not find that it was error not to instruct the jury as to this principle. That an expert's testimony is "reasonably certain" is said to be a prerequisite to the admissibility of that testimony. *See Lindsey*, 689 S.W.2d at 862. The admissibility of expert testimony is a matter of law for the court, not the jury. *See McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263 (Tenn. 1997). The trial court did not err in refusing to give this instruction.

*Miller*, 73 S.W.3d at 909.

Thus, Judge Susano correctly points out the only justifiable function that "reasonable degree of medical certainty" ever had. That it is, (under what is even in the admissibility of evidence context of highly questionable utility), a gate keeping question of law under which the trial court decides whether or not a doctor's opinion is admissible in evidence. It is not jury charge material and can only lead to confusion.

In *Volz v. Ledes*, 895 S.W.2d 677 (Tenn. 1995), the supreme court said:

> T.C.A. § 29-26-115(a)(3) requires that a plaintiff in a medical malpractice action prove that '[a]s a proximate result of the defendant's negligent act or omission

[of accepted community medical standards], the plaintiff suffered injuries which would not otherwise have occurred.'

> This statutory language is simply another way of expressing the requirement that the injury would not have occurred but for the defendant's negligence, our traditional test for cause in fact.

*Kilpatrick v. Bryant*, 868 S.W.2d 594, 602 (Tenn. 1993). Additionally, causation in medical malpractice cases must be shown as a matter of *probability*, i.e. more likely than not, or greater than a 50 percent chance, that the plaintiff's injuries would not have occurred but for the negligent actions of the defendant(s). *Id.*

The record reveals that the plaintiffs proffered sufficient proof at trial to establish that the negligence of Dr. Ledes more likely than not was the proximate cause of the death of Robert Volz. Expert medical testimony also established that when Volz was first treated by the defendant, he had a 60 percent chance of complete recovery. Further the plaintiffs offered uncontroverted testimony that the defendant, Dr. Ledes, failed to act in accordance with accepted community standards of medical practice for treatment of the disease from which Volz was suffering. The plaintiffs' proof established, that as a result of the defendant's deviation from such medical standards, Robert Volz suffered a death which otherwise would not have occurred. Stated another way, the record reveals that it was more likely than not Robert Volz would have survived the cancer but for the defendant's negligent actions.

*Volz v. Ledes*, 895 S.W.2d 677, 679-80 (Tenn. 1995).

In *Kilpatrick v. Bryant*, 868 S.W.2d 594 (Tenn. 1993), the supreme court went to great lengths to iterate the difference between causation in fact and proximate cause and to reassert that each was a separate element of negligence. Said the court:

> Causation and proximate cause are distinct elements of negligence, and both must be proven by the plaintiff by a preponderance of the evidence. *Bradshaw*, 854 S.W.2d at 869; *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991); *Smith v. Gore*, 728 S.W.2d 738, 749 (Tenn. 1987). "Causation (or cause in fact) is a very different concept from that of proximate cause. Causation refers to the cause and effect relationship between the tortious conduct and the injury. The doctrine of proximate cause encompasses the whole panoply of rules that may deny liability for otherwise actionable causes of harm." King, *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Injuries and Future Consequences*, 90 Yale L.J. 1353, 1355 n. 7 (1981). Thus, proximate cause, or legal cause, concerns a determination of whether legal liability should be imposed where cause in fact has been established. *McKellips v. Saint Francis Hosp.*, 741 P.2d 467 (Okl. 1987). "Cause in fact, on the other hand, deals with the 'but for' consequences of an act. 'The defendant's conduct is a cause of the event if the event would not have occurred

but for that conduct.' " *Id.* at 470 (quoting Prosser and Keeton, *The Law of Torts*, 266 (5th ed. 1984)).

*Kilpatrick v. Bryant*, 868 S.W.2d at 598.

Neither *Kilpatrick v. Bryant* nor *Lindsey v. Miami Development Corp.*, 689 S.W.2d 856 (Tenn. 1985), involve jury instructions or jury questions but involve rather summary judgment and gate keeping questions of law. As said in *Kilpatrick*:

> Thus, proof of causation equating to a 'possibility,' a 'might have,' 'may have,' 'could have,' is not sufficient, as a matter of law to establish the required nexus between the plaintiff's injury and the defendant's tortious conduct by a preponderance of the evidence in a medical malpractice case. Causation in fact is a matter of probability, not possibility and in a medical malpractice case, must be shown to a reasonable degree of medical certainty.

*Kilpatrick*, 868 S.W.2d at 602.

This Court addressing newly adopted Tenn. Rule of Evidence 702 made clear that admissibility was the question involved in "reasonable degree of medical certainty."

> The expert's opinion must substantially assist the jury in its determination and the question of what will 'substantially' assist the jury is one for the trial court to determine. The expert's testimony must satisfy Rule 702 and the threshold question for the court's determination is whether the witness' testimony "will substantially assist the trier of fact to understand the evidence or to determine a fact in issue." The Tennessee standard is much more stringent than its federal counterpart which merely requires evidence from experts which "assist the trier of fact" rather than "substantially assist the trier of fact." The importance of the court's task in determining whether the evidence will substantially assist the trier of fact is borne out by the weight given to an expert's testimony. "Expert testimony is unique because experts are allowed to give an opinion in a particular situation whereas other witnesses are prohibited from giving opinion testimony in areas where expertise is not required."
>
> . . . .
>
> Numerous Tennessee cases establish a necessary degree of medical certainty to prove causation. Testimony which amounts to mere speculation is not evidence which establishes proximate cause.
>
> We find nothing in the record or in the deposition which shows that the plaintiff laid the necessary foundation to prove medical expert causation. There is

no evidence to establish with a reasonable degree of medical certainty that plaintiff's heart attack and bypass surgery in 1990 resulted from the accident with defendant.

For the testimony of a physician to be admissible,

'It should show that such result is reasonably certain and not a mere likelihood or possibility.'

'To warrant a recovery for a permanent injury, the future effect of the injury must be shown with reasonable certainty. It is not necessary that the evidence show conclusively or without a shadow of doubt that the injuries are permanent. But while absolute certainty should not be required, a mere conjecture, or even a probability, does not warrant the giving of damages for future disability which may never exist.'

Testimony of experts as to the probable cause of injury should be subject to the same rules as applied supra in the case of probable effect of injury.

. . . .

'A doctor's testimony that a certain thing is possible is no evidence at all. His opinion as to what is possible is no more valid than the jury's own speculation as to what is or is not possible.' 'The mere possibility of a causal relationship, without more, is insufficient to qualify as an admissible expert opinion.'

*Primm v. Wickes Lumber Co.*, 845 S.W.2d 768, 770-71 (Tenn. Ct. App. 1992) (citations omitted).

Thus, if the doctor cannot testify as to cause in fact to a reasonable degree of medical certainty, his testimony is not admissible before the jury and if there is no other expert evidence of causation in fact in a medical malpractice case, summary judgment would be proper.

In the case at bar, in their special request number nine, Defendants and the trial court have taken out of context the phrase "causation in fact is a matter of probability and not possibility, and must be shown to a reasonable degree of medical certainty" as such phrase is used in *White v. Methodist Hospital South*, 844 S.W.2d 642, 648-49 (Tenn. Ct. App. 1992); *Kilpatrick v. Bryant*, 868 S.W.2d 594, 602 (Tenn. 1993); and *White v. Vanderbilt University*, 21 S.W.3d 215, 232 (Tenn. Ct. App. 1999) dealing with the admissibility of expert testimony and converted it into a jury charge which is exactly what *Miller v. Choo Choo Partners, L.P.*, 73 S.W.3d 897 (Tenn. Ct. App. 2001) asserts is not proper.

It is noted that in some cases as, for instance, *In re: Twining*, 894 P.2d 1331, 1336-37 (Wash. Ct. App. 1995), the term "reasonable medical certainty" has been held to mean "more likely than

-11-

not." One is compelled to ask under such circumstances why "reasonable medical certainty" continues to exist. It suffices to say in the case at bar that nowhere is anyone informed that the two terms are synonymous.

The Supreme Court of Nebraska made a particularly informative observation a century ago: "In *Altschuler v. Coburn*, 38 Neb. 881, 891, 57 N.W. 836, 838, (1894) we noted that an attempt to give a specific meaning to the word reasonable is like 'trying to count what is not a number, and measure what is not space.' " *Gleason v. Gleason*, 357 N.W.2d 463, 468 (Neb. 1984).

As this Court has held:

> The real question on this issue, then, is whether the error should be considered harmless. . . . Tenn. R. App. P. 36(b) states that a judgment should not be set aside unless, considering the whole record, the error more probably than not affected the judgment or would result in prejudice to the judicial process. Our courts have held that in order to amount to reversible error it must appear that the jury was misled by the erroneous charge.

*Carney v. Coco Cola Bottling Works of Tullahoma*, 856 S.W.2d 147, 150 (Tenn. Ct. App. 1993).

On this subject, the supreme court has said:

> Long ago, this Court established the rule that inconsistent or contradictory instructions "do not neutralize or validate each other, but are vitally erroneous. . . . The parties are entitled to a clear and consistent charge, as well as a correct one, that justice may be reached." *Citizens Street Railroad Co. v. Shepherd*, 107 Tenn. 444, 64 S.W. 710, 711 (1901). This principle was more recently discussed in *Abbott*, in which the Court of Appeals stated:
>> Instructions as a whole must be consistent and harmonious, not conflicting and contradictory. . . . Where instructions given to the jury for their guidance present contradictory and conflicting rules which are unexplained, and where following one would or might lead to a different result than would obtain by following the other, the instructions are inherently defective. This is true although one of the instructions correctly states the law applicable to the facts of the case, since the correct instruction cannot cure the error in the contradictory erroneous instruction. . . .
> 682 S.W.2d at 209, quoting 75 Am.Jur.2d *Trial* § 628, 920 (1974), and citing 88 C.J.S. *Trial* § 338-39 (1955).

*State v. Stephenson*, 878 S.W.2d 530, 555 (Tenn. 1994).

Unless one can, as a matter of every day common sense, say that "reasonable degree of medical certainty" and "more probably than not" are synonymous terms, the instructions in this case are inconsistent and contradictory and misleading to the jury. The erroneous charge is not harmless but reversible error.

## FORESEEABILITY

Plaintiffs also allege error in another jury instruction, which reads as follows: "In order for you to find either defendant to have been liable, you must find by a preponderance of the evidence that the death of Sophia Lynn Bara was reasonably foreseeable to the Defendant." Plaintiffs assert that they are not required to show that the specific injury, death, sustained by Sofia was foreseeable, only that some harm was foreseeable; thus, the court erred in stating that Plaintiff had to prove that *death* was foreseeable. However, Defendants argued that, to prove foreseeability, a plaintiff must show that harm of the same general character was reasonably foreseeable, so the jury instruction was proper. We find this instruction to be a misleading and improper statement of the law.

The Tennessee Supreme Court has clearly set out the foreseeability requirement for finding proximate cause.

> Taken as a whole, our cases suggest a three-pronged test for proximate causation: (1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence. *See Smith v. Gore*, 728 S.W.2d 738, 749-50 (Tenn. 1987); *Ford Motor Co. v. Eads*, 224 Tenn. 473, 457 S.W.2d 28, 32 (Tenn. 1970); *Ray Carter, Inc. v. Edwards*, 222 Tenn. 465, 436 S.W.2d 864, 867 (Tenn. 1969); *Lancaster v. Montesi*, 216 Tenn. 50, 390 S.W.2d 217, 221 (Tenn. 1965); *Roberts v. Robertson County Bd. of Ed.*, 692 S.W.2d 863, 871 (Tenn. App. 1985); *Caldwell v. Ford Motor Co.*, 619 S.W.2d 534, 541-43 (Tenn. App. 1981); *Wyatt v. Winnebago Industries, Inc.*, 566 S.W.2d 276, 280-81 (Tenn. App. 1977). The foreseeability requirement is not so strict as to require the tortfeasor to foresee the exact manner in which the injury takes place, provided it is determined that the tortfeasor could foresee, or through the exercise of reasonable diligence should have foreseen, the general manner in which the injury or loss occurred. *Roberts* at 871; *Wyatt* at 280-81. 'The fact that an accident may be freakish does not per se make it unpredictable or unforeseen.' *City of Elizabethton v. Sluder*, 534 S.W.2d 115, 117 (Tenn. 1976). It is sufficient that harm in the abstract could reasonably be foreseen. *Shell Oil Co. v. Blanks*, 46 Tenn. App. 539, 330 S.W.2d 569, 572 (Tenn. 1959).

*McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991).

The defendant argues that the deceased's act was so unusual and extraordinary that the act was unforeseeable; therefore, the defendant was under no duty to guard against such an act. Accidents, however, 'almost invariably are surprises, in the sense that the precise manner of their occurrence cannot be foreseen.' *Spivey v. St. Thomas Hospital*, 31 Tenn. App. 12, 211 S.W.2d 450, 455 (Tenn. Ct. App. 1947). Accordingly the particular harm need not have been foreseeable if another 'harm of a like general character was reasonably foreseeable.' *Id.* at 457.

The defendant stresses that the accident was not foreseeable, since there is no indication that another patient had ever severed an endotracheal tube. The record, however, is clear that a risk of some harm is foreseeable if an endotracheal tube is occluded or impaired. . . . If a jury were to find that some harm resulting from occlusion was foreseeable in light of the circumstances, then the defendant would also owe a duty to protect Mr. Garrett from completely severing the endotracheal tube, even though this specific harm was never foreseen. *Spivey*, 211 S.W.2d at 457.

*Moon v. St. Thomas Hospital*, 983 S.W.2d 225, 229 (Tenn. 1998).

These cases make clear that Plaintiffs were not required to prove that death was foreseeable, but merely that some harm could have foreseeably resulted from Defendants' action or inaction and, through the exercise of reasonable diligence, could have been foreseen. This foreseeability instruction standing alone might not constitute reversible error under T.R.A.P. 36(b) but nonetheless is error and should be corrected on re-trial.

## CONCLUSION

The issue asserted by Appellant that the verdict is against the overwhelming weight of the evidence presents no issue for appellate review since T.R.A.P. 13(d) provides in part: "Findings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict."

We find no error in the verdict and judgment in favor of Clarksville Memorial Hospital and indeed Appellant all but concedes as to the hospital at the bar of this court. We find, however, that the charge to the jury concerning the burden of proof on causation is erroneous, confusing, and misleading and reversible error. We further find the charge as to foreseeability to be in error.

The judgment in favor of Clarksville Memorial Hospital is in all respects affirmed with costs in that case assessed against Appellant. The judgment in favor of Dr. Miller is reversed and remanded for a new trial with costs assessed to the appellee Miller.

-14-

This case is remanded to the trial court for proceedings in conformity with this opinion.

_____

WILLIAM B. CAIN, JUDGE