# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### June 22, 2016 Session

## MELINDA DUNCAN, ET AL. v. CHERYL L. LEDFORD MD, ET AL.

### Appeal from the Circuit Court for Madison County
### No. C-11-8   Kyle Atkins, Judge

_____

### No. W2015-02370-COA-R3-CV – Filed August 24, 2016

_____

This is a healthcare liability case.  The trial court granted summary judgment in favor of Appellees, Appellant's treating physician and her employer.  Summary judgment was based on the trial court's finding that Appellants had failed to meet their burden of proof to show that Appellee doctor deviated from the standard of care or that the treatment provided caused Appellant to sustain injuries that otherwise would not have occurred.  Discerning no error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Affirmed and Remanded

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and WILLIAM B. ACREE, SP. J., joined.

Richard Glassman, Lauran Glassman Stimac, and Edwin E. Wallis, III, Memphis, Tennessee, for the appellants, Melinda Duncan, and Jeff Duncan.

Marty R. Phillips, Brandon James Stout, and Timothy G. Wehner, Jackson, Tennessee, for the appellees, Cheryl L. Ledford, M.D., and The Jackson Clinic, P.A..

## OPINION

This healthcare liability action was filed by Melinda Duncan and her husband, Jeff Duncan (together, "Appellants"), against Cheryl L. Ledford, M.D. and The Jackson Clinic, P.A. ("Jackson Clinic," and together with Dr. Ledford, "Appellees").[1]  The case arises from

_____

[1] Jackson-Madison County General Hospital was originally named as a defendant in the lawsuit.  On December 3, 2012, the trial court entered an order granting the hospital's motion for summary judgment.  The

an accident that occurred on September 7, 2009, when Mrs. Duncan was riding as a passenger in a Yamaha Rhino, which is an all-terrain vehicle ("ATV"). The ATV rolled over and caused Mrs. Duncan to be dragged over the ground. The accident fractured her shoulder, causing a crush injury to the tissue around the fracture. Mrs. Duncan also sustained a large abrasion over her shoulder. Mrs. Duncan was transported to the Jackson-Madison County General Hospital ("JMCGH") emergency department, where she was initially triaged by emergency room nurse, Stephanie Boling, R.N. Nurse Boling testified that she "cleaned [the] abrasion with saline and gauze." The emergency room physician then called for a consultation from Dr. Ledford, an orthopedic surgeon employed by Jackson Clinic. On examination, Dr. Ledford was primarily concerned with the fracture to Mrs. Duncan's shoulder. Dr. Ledford, however, noted that Mrs. Duncan's abrasion was superficial (i.e., not full thickness through her skin). She also noted that there were bits of dirt embedded in the abrasion, but Dr. Ledford did not order that the abrasion be cleaned further at the hospital as the nursing staff had already washed the abrasion before Dr. Ledford was called in for an orthopedic consultation. Dr. Ledford ultimately determined that Mrs. Duncan did not need to be hospitalized for her orthopedic injuries. Instead, Dr. Ledford instructed her to go home and wash the abrasion with soap and water. Dr. Ledford set an in-clinic appointment for September 9, 2009 to further evaluate the closed shoulder injury.

On September 9, 2009, Dr. Ledford saw Mrs. Duncan in her office at Jackson Clinic, where a CT scan was performed. The CT scan revealed a "closed right comminuted four-part brachial humerus fracture with ancillary ulnar nerve injuries, likely brachial plexopathy with head split on dedicated shoulder." After the full extent of Mrs. Duncan's injury was determined, Dr. Ledford recommended non-emergency treatment by a shoulder specialist. Dr. Ledford suggested a specialist at Vanderbilt University Medical Center; however, Appellants asked to be referred to a specialist closer to Jackson. While Mrs. Duncan was awaiting referral to a specialist, on September 10, 2009, Mrs. Duncan became feverish and nauseous and developed an odor around her arm and shoulder. On the morning of September 11, 2009, Mrs. Duncan saw her primary physician, Dr. Andy Coy.

Dr. Coy diagnosed Mrs. Duncan with cellulitis, a superficial infection of the skin. He referred her to the hospital for treatment. A hospitalist at JMCGH consulted Dr. Melissa Appleton, an infectious disease specialist. Dr. Appleton diagnosed Mrs. Duncan as having cellulitis and a urinary tract infection and admitted her to the hospital. To treat these infections, Dr. Appleton prescribed antibiotic medication. By September 14, 2009, Mrs. Duncan's condition had significantly improved.

While Mrs. Duncan's cellulitis improved, the crush injury to the tissue over the bone began to manifest. Specifically, the necrotic, or dead tissue on her arm became clinically noticeable. The severity of the crush injury required plastic and orthopedic surgeries to

hospital is not a party to this appeal.

remove the necrotic tissue and repair the severely broken shoulder. Mrs. Duncan's injuries were more extensive than could be handled at JMCGH; accordingly, she was transferred to Vanderbilt on September 14, 2009. At Vanderbilt, Dr. Blair Summitt, a plastic surgeon, treated Mrs. Duncan. Dr. Summitt did not note the existence of cellulitis and testified that it "looked like [the cellulitis] had resolved" as he "didn't see cellulitis when [he] saw [Mrs. Duncan]." Dr. Summitt and other providers at Vanderbilt successfully treated Mrs. Duncan for the crush injuries she sustained in the ATV accident by removing the dead, crushed tissue over the course of four operations. Following her treatment at Vanderbilt, Mrs. Duncan underwent shoulder replacement surgery at Campbell Clinic in Memphis. The repair to the shoulder could only be made after the necrotic tissue had been removed and had healed.

Appellants filed suit against the Appellees on January 11, 2011 and later filed an amended complaint on April 23, 2012. Therein, Appellants asserted that Dr. Ledford and Jackson Clinic were negligent in their treatment of Mrs. Duncan's injuries on September 7, 2009. Specifically, Appellants averred that Appellees were negligent in: (1) failing to properly evaluate and examine Mrs. Duncan post-injury; (2) failing to ensure that Mrs. Duncan received proper care and treatment post-injury; (3) failing to prescribe appropriate medications; (4) negligently performing examination on Mrs. Duncan; (5) negligently failing to provide proper diagnosis; (6) negligently failing to supply appropriate and accurate information regarding Mrs. Duncan's condition; (7) failing to use ordinary and reasonable care under the circumstances; and (8) failing to communicate with Mrs. Duncan and/or her family members. On January 9, 2013, Appellees filed a joint answer to the amended complaint, wherein they denied liability and raised, as an affirmative defense, the comparative fault of the ATV owner/operator and the comparative fault of Appellants in allegedly failing to properly clean Mrs. Duncan's abrasion as instructed after she left the hospital on September 7, 2012.

On May 17, 2013, Appellees filed a joint motion for summary judgment. Therein, Appellees asserted, *inter alia*, that they were entitled to summary judgment based on Dr. Ledford's deposition testimony, which allegedly proved that Dr. Ledford complied with the applicable standard of care. Appellees further asserted that they were entitled to summary judgment because Appellants had failed to disclose their expert in the time provided under the scheduling order and amendments thereto. After being allowed additional time to disclose their expert witnesses, on July 22, 2013, Appellants filed the Affidavit of Thomas Myers, M.D. On August 20, 2013, Appellants filed a response in opposition to Appellees' motion for summary judgment. The trial court heard the motion for summary judgment on September 30, 2013. By order of December 2, 2013, the trial court denied Appellees' first motion for summary judgment.

Following additional discovery, on October 2, 2015, Appellees filed a second motion for summary judgment, wherein they averred, *inter alia*, that Dr. Myers' testimony was insufficient to establish either that Dr. Ledford had deviated from the applicable standard of

medical care in Mrs. Duncan's case, or that Dr. Ledford's actions had caused Mrs. Duncan's injuries. On November 2, 2015, Appellants filed a response in opposition to the second motion for summary judgment. The trial court heard the motion for summary judgment on November 2, 2015. By order of November 10, 2015, the trial court granted the Appellees' motion for summary judgment.

## II. Issues

Although Appellants raise five issues in their brief, we perceive that there are two dispositive issues in this case, which we state as follows:

1. Whether the trial court made sufficient findings in its order granting summary judgment to satisfy the requirements of Tennessee Rule of Civil Procedure 56.04.
2. If so, whether the trial court erred in granting summary judgment in favor of the Appellees.

## III. Record on Appeal

Before turning to the dispositive issues in this case, we note that he appellate record in this case consists of nine volumes of technical record and an additional twelve volumes comprised of depositions that were taken in this case, regardless of whether the depositions were used in relation to the motion for summary judgment. In our review of this overly voluminous record, we found that the majority of the pages therein relate to the protracted discovery that took place in this case. It is, of course, incumbent upon the parties to prepare an adequate record for our review. Tenn. R App. P. 24(b). In preparing the record, parties should not lose sight of the mandates contained in Tennessee Rule of Appellate Procedure 24. We specifically refer the parties to Tennessee Rule of Appellate Procedure 24(a), concerning the content of the appellate record. This Rule provides, in relevant part that:

> The following papers filed in the trial court are excluded from the record: (1) subpoenas or summonses for any witness or for any defendant when there is an appearance for such defendant; (2) **all papers relating to discovery**, including depositions, interrogatories and answers thereto, reports of physical or mental examinations, requests to admit, and **all notices, motions or orders relating thereto**; (3) any list from which jurors are selected; and (4) trial briefs; and (5) minutes of opening and closing of court. Any paper relating to discovery and offered in evidence for any purpose shall be clearly identified and treated as an exhibit. **No paper need be included in the record more than once**.

Tenn. R. App. P. 24(a) (emphasis added). All too often litigants ignore Rule 24(a) and include, in the appellate record, every trial court filing no matter how extraneous or irrelevant. In doing so, the parties place on this Court a duty that falls to them, i.e., to **prepare** the appellate record. In the instant case, the extraneous filings include such items as emails regarding scheduling, notices to take various depositions, motions in limine, motions

- 4 -

to quash, and irrelevant memoranda of law.  In addition, there are many duplicate filings. Had the parties adhered to the rules of appellate procedure regarding the exclusion of discovery and other unneeded or duplicative filings, our record would have been more manageable, and this Court would not have had to sift through numerous volumes in order to find the filings that are relevant to the issues presented. Because we often see extraneous filings in appellate records, we take this opportunity to remind future litigants that they should endeavor to adhere to the rules of appellate procedure when submitting records to this Court.

## IV. Standard of Review

In *Rye v. Women's Care Center of Memphis, MPLLC, et al.*, 477 S.W.3d 235 (Tenn. 2015), the Tennessee Supreme Court discussed the standard of review applicable to summary judgments in healthcare liability cases:

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] ... supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" at the summary judgment stage "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,*[*Ltd. v. Zenith Radio Corp.*,] 475 U.S. [574,] at 586, 106 S.Ct. 1348 [1986]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance

- 5 -

to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence at the summary judgment stage is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Id.* at 264-65.

## V. Analysis

### A. Sufficiency of the Trial Court's Findings under Tennessee Rule of Civil Procedure 56.04

Appellants contend that the trial court's November 10, 2015 order, granting summary judgment in favor of Appellees, fails to make findings sufficient to satisfy the requirements of Tennessee Rule of Civil Procedure 56.04, which, in relevant part, states that "[t]he trial court shall state the legal grounds upon which the court denies or grants the motion, which shall be included in the order reflecting the court's ruling." Here, the trial court's November 10, 2015 order provides, in relevant part, that:

> With regard to TCA Section 29-26-115(a)(2) the Court finds that [Appellants] ha[ve] failed to establish that [Dr. Ledford] deviated from the standard of care for an orthopedic surgeon in Jackson-Madison County, Tennessee to a reasonable degree of medical certainty for two reasons. First, the Court finds that Dr. Myers testified in his discovery deposition that Dr. Ledford complied with the standard of care during the emergency room visit of September 7, 2009. Dr. Myers testified during the deposition, at several different times and in response to several different questions, that Dr. Ledford complied with the standard of care. Later, in his evidentiary deposition, Dr. Myers testified that Dr. Ledford complied with the standard of care. However, in the same evidentiary deposition, Dr. Myers testified that Dr. Ledford did not comply with the standard of care. These contradictory sworn statements regarding the same fact cancel each other out and are of no probative value. *See* Lockard v. Bratton No. W2007-02820-COA-R3-CV, 2009 WL 275783. Second, Dr. Myers testified in his evidentiary deposition that his opinions were based on whether the wound was a superficial wound or a deeper wound. There is no proof in the record to support the wound being anything other than a superficial wound on September 7, 2009. Therefore, looking at Dr. Myers' testimony as a whole, he is equivocal at best as to the deviation from the

standard of care and definitely not able to give an opinion to a reasonable degree of medical certainty.

Finally, with regard to TCA 29-26-115(a)(3), Dr. Myers' testimony did not prove that [Mrs. Ledford] suffered an injury which would not otherwise have occurred absent the care of Dr. Ledford complying with the applicable standard of care. Dr. Myers was asked questions on multiple occasions throughout both his discovery deposition and the evidentiary deposition, and he testified that different care from Dr. Ledford would not have changed the outcome. [Appellants] have argued that the "outcome" Dr. Myers was testifying about was the ultimate injury to Mrs. Duncan's arm that was treated at Vanderbilt and not the hospital stay in Jackson for cellulitis. However, it is clear from a reading of both the evidentiary and discovery deposition that Dr. Myers was testifying about the outcome of the treatment given on September 7, 2009.

Based upon the reasons listed above, [Appellants] have failed to demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find that Dr. Ledford deviated from the standard of care. [Appellants] ha[ve] also failed to demonstrate that as a result of Dr. Ledford's treatment [Mrs. Duncan] suffered injuries which would not otherwise have occurred.

***

The Court further finds that [Appellants] ha[ve] failed to put any proof in the record as it relates to the direct action against the Defendant, The Jackson Clinic, P.A., and therefore summary judgment is granted in favor of Defendant, The Jackson Clinic, P.A.

As this Court noted in *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303 (Tenn.Ct.App.2014):

Tenn. R. Civ. P. 56.04 requires the trial court, upon granting or denying a motion for summary judgment, to state the grounds for its decision ... Not only will this requirement assure that the decision is the trial court's, it will also (1) assure the parties that the trial court independently considered their arguments, (2) enable the reviewing courts to ascertain the basis for the trial court's decision, and (3) promote independent, logical decision-making.

*Id*. at 316-17 (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir.1990); *State v. King*, 432 S.W.3d 316, 322 (Tenn.2014)). In their brief, Appellants assert that "the summary

judgment order fails to set forth the specific facts that the trial court considered, relied upon and adopted to reach the court's conclusions." Contrary to Appellants' argument, Rule 56.04 does not require that a trial court enter findings of fact in its order granting or denying summary judgment. Tenn. R. Civ. P. 52.01 ("Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56...."). Rather, Tennessee Rule of Civil Procedure 56.04 only requires the trial court's order to "state the grounds for its decision." Concerning the statements contained in the trial court's order, *supra*, we conclude that the order clearly states the legal grounds upon which the trial court granted summary judgment, including its determinations that there is no dispute of material fact and that Appellants' evidence is insufficient to establish that Dr. Ledford deviated from the standard of care thereby causing Mrs. Duncan to suffer injuries that otherwise would not have occurred. Accordingly, Appellants are not entitled to relief on this issue.

## B. Summary Judgment

To prevail on a health care liability claim, a plaintiff must establish the following statutory elements:

> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn. Code Ann. § 29-26-115(a). A legal injury "signifies an act or omission against [a] person's rights that results in some damage." *Church v. Perales*, 39 S.W.3d 149, 171 (Tenn. Ct. App. 2000) (citing *Barnes v. Kyle*, 306 S.W.2d 1, 4 (Tenn. 1957)). "Any want of skillful care or diligence on a physician's part that sets back a patient's recovery, prolongs the patient's illness, increases the plaintiff's suffering, or, in short, makes the patient's condition worse than if due skill, care, and diligence had been used, constitutes injury for the purpose of a [health care liability action]." *Church*, 39 S.W.3d at 171.

Importantly, in its November 10, 2015 order granting summary judgment, the trial court specifically stated that "[t]he parties have agreed that the allegation of medical negligence is limited only to the care and treatment by Dr. Ledford on the initial emergency room visit of September 7, 2009." In other words, Appellants' health care liability action is limited to the care Mrs. Duncan received from Dr. Ledford at the initial emergency room visit immediately post-accident. As set out in Appellants' amended complaint, the crux of their allegations of negligence revolve around Dr. Ledford's alleged failure to properly clean

and debride the "road rash" injury to Mrs. Duncan's upper arm at the time of the treatment in the emergency room. Appellants contend that the infection resulting from the initial failure to clean the wound necessitated advanced wound treatment at Vanderbilt and otherwise exacerbated Mrs. Duncan's condition. Because Appellants' allegations of negligence are limited to Mrs. Duncan's initial treatment in the emergency room, any claim against Jackson Clinic would, necessarily, be based on the doctrine of respondeat superior as Mrs. Duncan was not seen at Jackson Clinic until two days after her accident. As set out in context above, the trial court found that Appellants had failed to meet their burden of proof to show two of the prima facie elements of their lawsuit. Specifically, the court held that Appellants had failed to put forth sufficient evidence to show either that Dr. Ledford deviated from the applicable standard of care, or that the treatment provided by Dr. Ledford caused Mrs. Duncan injuries that would not otherwise have occurred.

## 1. Deviation from the Applicable Standard of Care

As discussed above, Appellants designated Dr. Thomas Myers, an orthopedic surgeon practicing in Marietta, Georgia, as their expert witness. As noted in the trial court's order, Dr. Myers was deposed two times—once for discovery by the Appellees and once for evidentiary purposes on October 9, 2015. As noted by the trial court in its order granting summary judgment, there is conflicting testimony, between Dr. Myers' discovery deposition and his evidentiary deposition, regarding whether Dr. Ledford deviated from the applicable standard of care in treating Mrs. Duncan on September 7, 2009. Accordingly, in their appellate brief, Appellants devote a good portion to the argument that "the trial court overstepped its role by concluding that Dr. Myers contradicted himself." As previously explained by this Court, "[i]t is a rule of law in this state that contradictory statements of a witness in connection with the same fact have the result of cancelling each other out." *Taylor v. Nashville Publishing Company*, 573 S.W.2d 476, 483 (Tenn. Ct. App. 1978), *perm. app. denied* (Tenn. Nov. 6, 1978) (citations omitted). Contradictory testimony cannot, as argued by Appellants, create a dispute of fact:

> The question . . . is not one of the credibility of a witness or of the weight of evidence; but it is whether there is any evidence at all to prove the fact. If two witnesses contradict each other, there is proof on both sides, and it is for the jury to say where the truth lies; but if the proof of a fact lies wholly with one witness, and he both affirms and denies it, and there is no explanation, it cannot stand otherwise than unproven. For his testimony to prove it is no stronger than his testimony to disprove it, and it would be mere caprice in a jury upon such evidence to decide it either way.

*Id*. (citing *Johnston v. Cincinnati N. O. & T. P. Ry. Co.*, 146 Tenn. 135, 240 S.W. 429 (1922)).

Disregarding Dr. Myers' contradictory statements, a problem still exists concerning Dr. Myers' ability to opine as to whether Dr. Ledford deviated from the applicable standard of care. By his own admission, Dr. Myers is unsure whether Mrs. Duncan's "road rash" abrasion was superficial, or whether it was full-thickness. In her notes from September 7, 2009, Dr. Ledford states that the injury is merely superficial; this is a fact that Dr. Myers concedes in his deposition testimony:

Q. And do you [Dr. Myers] see that it [Dr. Ledford's notation] says that there are no full-thickness skin breaks?

A. I see a physical examination that says, "There is [sic] no full-thickness breaks in the skin."

***

Q. And that conclusion as recorded in the note also supports the idea that this is a superficial injury?

A. It does.

Q. In fact there's nothing in the medical record from September 7th that supports the notion that it's not a superficial injury; agreed?

A. Agreed.

Q. Dr. Ledford's notes on that day, September 7, 2009, say that the remainder of the skin is intact?

A. Yes.

Q. That supports the idea that it's a superficial injury?

A. It does.

Having reviewed the record, we conclude that Dr. Myers concedes, in his testimony, that the only evidence in the record is that Mrs. Duncan's injury was superficial. Although he did not know the extent of the wound, Dr. Myers testified that:

The best way that I can summarize, and hopefully this will coincide with both of these depositions [i.e., that the injury was superficial and that the injury was full-thickness], is to say that: If in fact, this wound was not a contaminated wound; and if, in fact, this wound was not a full-thickness skin injury; then, in

- 10 -

my opinion, what Dr. Ledford did in the emergency room on September 7th was appropriate.

Given that the only evidence in the record shows that Mrs. Duncan's abrasion was superficial, and given Dr. Myers' testimony, *supra*, that "if, in fact, this would was not full-thickness skin injury; then, in my opinion, what Dr. Ledford did in the emergency room on September 7th was appropriate," this proof, by their own expert, effectively negates an essential element of Appellants' case, i.e., that Dr. Ledford deviated from the applicable standard of care.

## 2. Causation

The final element of a plaintiff's prima facie health care liability action is causation. Tenn. Code Ann. § 29-26-115(a)(3). The plaintiff must prove that "[a]s a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred." *Id*. A mere possibility of causation is not enough to satisfy this burden. *White v. Methodist Hosp. S.,* 844 S.W.2d 642, 649 (Tenn. Ct. App.1992). Instead, the "plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result." *Lindsey v. Miami Development Corp.*, 689 S.W.2d 856, 861 (Tenn. 1985); *see also Kilpatrick v. Bryant*, 868 S.W.2d 594, 602 (Tenn.1993).

In this case, causation must be demonstrated by an expert witness who holds an opinion as to the cause-in-fact to a reasonable degree of medical certainty. *See Kilpatrick*, 868 S.W.2d at 602.[2] Both the *Kilpatrick* case and the *Lindsey* case involved summary judgment and the trial court's gate keeping role in determining whether the proffered expert's testimony on causation is given to a reasonable degree of medical certainty. In other words, "if the doctor cannot testify as to cause in fact to a reasonable degree of medical certainty, his [or her] testimony is not admissible before the jury and if there is no other expert evidence of causation in fact in a medical malpractice case, summary judgment would be proper." *Bara v. Clarksville Memorial Health Systems, Inc.* 104 S.W.3d 1, 10 (Tenn. Ct. App.2002), *perm. app. denied* (Tenn. March 17, 2003). As explained by the Tennessee Supreme Court in *Kilpatrick*:

---

[2] Appellants' argument on the issues of causation and deviation from the standard of care rely, *inter alia,* on the testimony of Dr. Blair Summitt. However, Dr. Summitt specifically stated that he was not testifying as to the standard of care in Jackson, Tennessee, but only to what he "might have done had the patient been seen" at Vanderbilt. Because Dr. Summitt was not proffered as an expert in this case, his testimony is insufficient to satisfy the causation element of Appellants' prima facie case. Likewise, Appellants' reliance on the testimony of Nurse Boling is not sufficient because she was also not qualified as an expert in this case.

- 11 -

Thus, proof of causation equating to a "possibility," a "might have," "may have," "could have," is not sufficient, as a matter of law to establish the required nexus between the plaintiff's injury and the defendant's tortious conduct by a preponderance of the evidence in a medical malpractice case. Causation in fact is a matter of probability, not possibility and in a medical malpractice case, must be shown to a reasonable degree of medical certainty.

*Kilpatrick*, 868 S.W.2d at 602. The question of whether an expert's testimony satisfies the foregoing requirements is a threshold question of admissibility for the trial court to decide as a matter of law. *Bara*, 104 S.W.3d at 8. However, as explained in *Dickson v. Kriger*, No. W2013-02830-COA-R3-CV, 2014 WL 7427235 (Tenn. Ct. App. Dec. 30, 2014):

When construing the contents of the witness's testimony, and whether it establishes a prima facie showing of causation, we must view the testimony "as the testimony of a medical person and not that of an individual trained in the law." *Miller* [*v. Choo Choo Partners, LP*], 73 S.W.3d [897,] at 905 [Tenn. Ct. App. Nov. 5, 2001, *perm. app. denied* (Tenn. April 1, 2002)]. To require medical expert witnesses to use precise legal language when discussing causation is "expecting too much." *Id*.; *Mitchell v. Ensor*, No. W2001–01683–COA–R3–CV, 2002 WL 31730908, at *11 (Tenn. Ct. App. Nov. 18, 2002). If there are two interpretations of an expert's testimony on causation, the court should adopt the interpretation most favorable to the non-moving party. *See Miller*, 73 S.W.3d at 906.

*Dickson*, 2014 WL 7427235, at *4. With the foregoing in mind, we turn to Dr. Myers' relevant testimony concerning his opinion on the cause of Mrs. Duncan's injuries. In his evidentiary deposition, Dr. Myers states:

Q. Okay. Sometimes infections like Mrs. Duncan's—her cellulitis— sometimes those occur no matter what the doctor does; right?

A. Sometimes infections occur no matter what a doctor does? Yes.

Q. A doctor cannot eliminate the risk of cellulites; true?

A. True.

Q. A physician can't reasonably remove every particle of dirt; right?

A. Yes.

Q. A physician can't completely sterilize the skin no matter how much you

- 12 -

clean it or scrub it; right?

A. Correct.

***

Q. Even if a physician were able to remove all of the dirt or grass or gravel, the risk of infection would remain; wouldn't it?

A. A risk of infection would remain; absolutely.

Q. And this is because it's not the dirt that causes the infection, it's the bacteria that causes the infection?

A. Right.

Q. And bacteria are microscopic organisms; aren't they?

A. They are.

Q. We can't see them, and we can't tell if we've removed them?

A. Correct.

Q. And despite whatever efforts one might undertake, bacteria may remain?

A. Yes.

***

Q. Mrs. Duncan did not have any permanent injury from the cellulitis; did she?

A. I don't know.

Q. Because you don't know what her condition is?

A. Right.

Q. And you really don't know what happened after she left Jackson?

A. I do not.

- 13 -

Q. And you can't give any opinion about her current condition?

A. I cannot.

Q. Or what if anything may have caused it?

A. Correct.

As evidenced by the foregoing testimony, Dr. Myers' testimony fails to provide a "reasonable basis for the conclusion that it is more likely than not that [Dr. Ledford's] conduct was a cause in fact of [Mrs. Duncan's injuries]." *Kilpatrick*, 868 S.W.2d at 602. Dr. Myers concedes as much, in his evidentiary deposition:

Q. You can't say to a reasonable degree of medical certainty whether any different treatment on Dr. Ledford's part would have changed the outcome for Mrs. Duncan; true?

A. True.

In the absence of any evidence to support a causal link between Dr. Ledford's treatment in the emergency room and Mrs. Duncan's injuries, Appellants have failed to satisfy their burden of proof on the element of causation. Accordingly, the trial court correctly granted summary judgment in favor of Dr. Ledford. Because Appellants failed to prove their prima facie case against Dr. Ledford, the trial court also correctly granted summary judgment to Jackson Clinic.

## VI. Conclusion

For the foregoing reasons, we affirm the order of the trial court. The case is remanded to the trial court for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellants, Melinda Duncan, Jeff Duncan, and their surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE

- 14 -