**DALLAS, GARLAND & NORTHEAST-ERN RAILROAD, Appellant**

v.

**HUNT COUNTY, Texas, Appellee.**

No. 05–05–00488–CV.

Court of Appeals of Texas,
Dallas.

June 27, 2006.

Leann Wainscott Diamond, Friedman & Feiger, LLP, Dallas, for appellant.

Robert Fugate, Stephen D. Henninger, Thomas P. Brandt, Fanning Harper & Martinson, P.C., Dallas, for appellee.

Before Justices MOSELEY, RICHTER, and LANG–MIERS.

## OPINION

Opinion by Justice MOSELEY.

Dallas, Garland & Northeastern Railroad (Railroad) challenges the summary judgment granted in favor of Hunt County on the Railroad's inverse condemnation claim and negligence claim. We conclude that the County is not liable for a taking because the County lacked intentional conduct. We also conclude the Railroad failed to show the negligence claim comes within the limited waiver of governmental immunity under the Texas Tort Claims Act (Act). Thus we affirm the trial court's judgment.

### I. Factual and Procedural Background

On December 18, 2001, a Hunt County work crew performed road maintenance work on a county road where it crossed the Railroad's tracks. While filling in thinning areas of the road with surface rock, the crew left about four inches of road-base material covering the Railroad's tracks. The Railroad's train derailed after encountering the road-base material left by the road-maintenance crew. The Railroad sued the County, alleging non-negligent nuisance, negligent nuisance, negligence under the Act, and a taking of its property by inverse condemnation. The Railroad claimed property damages of at least $20,000.

The County filed a plea to the jurisdiction, which the trial court denied in its entirety. On the County's interlocutory appeal, this Court reversed in part, dismissing the Railroad's claims for nuisance and non-negligent nuisance. *Hunt County v. Dallas, Garland & Ne. R.R.*, No. 05–03–01587–CV, 2004 WL 1178609, at *4 (Tex. App.-Dallas 2004, no pet.) (unpublished op.). This Court, however, affirmed the trial court's denial of the plea as to the inverse condemnation claim and for the negligence claim "insofar as the Railroad alleges property damage that arises from the County's operation or use of a motor-driven vehicle or motor-driven equipment." *Id.* at *6. Thus we remanded those claims for further proceedings.

On remand, the County filed a traditional and no-evidence motion for partial sum-

mary judgment regarding the Railroad's inverse condemnation claim; it asserted that as a matter of law, the spreading of road-base material over the train tracks was not an intentional, authorized act of the County. The trial court granted the County's motion.

Both parties then moved for summary judgment on the Railroad's negligence claim. The County stipulated it was negligent but asserted it was not liable due to sovereign immunity under the Act. The County's motion asserted the evidence proved as a matter of law that the Railroad suffered no damages from the use or operation of a motor-driven vehicle or motor-driven equipment, but rather, the derailment caused the damages. The trial court granted the County's motion for summary judgment. The Railroad appeals.

## II. Motions Granting Partial Summary Judgment and Summary Judgment

### A. Standard of Review and Applicable Law

The standards for reviewing a summary judgment are well-established. The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). A plaintiff moving for summary judgment must conclusively prove all essential elements of its claim. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986) (per curiam). A defendant moving for summary judgment must either (1) disprove at least one element of the plaintiff's theory of recovery, or (2) plead and conclusively establish each essential element of an affirmative defense. *See City of Hous-*

*ton v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex.1979); *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 657 (Tex.App.-Dallas 1992, no writ).

When both parties move for summary judgment, we indulge all reasonable inferences and resolve all doubts in favor of the losing party. *See Donahue v. Bowles, Troy, Donahue, Johnson, Inc.*, 949 S.W.2d 746, 750 (Tex.App.-Dallas 1997, writ denied); *Bossin v. Towber*, 894 S.W.2d 25, 29 (Tex.App.-Houston [14th Dist.] 1994, writ denied). When both parties file motions for summary judgment and one is granted and the other denied, we may consider all questions presented and render the judgment the trial court should have rendered. *See Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988) (orig. proceeding) (per curiam). If a movant does not show its entitlement to summary judgment as a matter of law, this Court must remand the case to the trial court. *See Gibbs v. Gen. Motors Corp.*, 450 S.W.2d 827, 829 (Tex.1970).

### 1. Inverse Condemnation

In its first issue, the Railroad argues the trial court erred in granting summary judgment on its inverse condemnation claim, alleging the County's act of leaving road-base material on the track was intentional and authorized, and thus tantamount to a taking. TEX. CONST. art. I, § 17; *State v. Hale*, 136 Tex. 29, 146 S.W.2d 731, 736 (1941); *Dalon v. City of DeSoto*, 852 S.W.2d 530, 537–38 (Tex.App.-Dallas 1992, writ denied).

Article I, section 17 of the Texas Constitution provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by consent of such person." TEX. CONST. art. I, § 17. Whether the facts present a taking or not is a question of law. *Gen.*

*Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex.2001); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 932–33 (Tex.1998). To establish a "taking," the plaintiff must prove: (1) the State intentionally performed certain acts, (2) that resulted in a "taking" of property, (3) for public use. *Hale*, 146 S.W.2d at 736; *Dalon*, 852 S.W.2d at 537–38.

■ When the negligence of a government employee damages or destroys private property, the property is not taken or damaged for public use. *Tarrant County v. English*, 989 S.W.2d 368, 373 (Tex.App.-Fort Worth 1998, pet. denied). No taking occurs unless the state authorized the damage in the exercise of its lawful authority, or the damage was a necessary, consequential result of the governmental action. *Id.; see Dallas County Flood Control Dist. v. Benson*, 157 Tex. 617, 306 S.W.2d 350, 351 (1957); *Tex. Highway Dep't v. Weber*, 147 Tex. 628, 219 S.W.2d 70, 72 (1949). "A person's property may be 'taken, damaged or destroyed' and therefore require compensation if an injury results from either the construction of public works or their subsequent maintenance and operation. However, mere negligence which eventually contributes to the destruction of property is not a taking." *City of Tyler v. Likes*, 962 S.W.2d 489, 505 (Tex.1997) (citations omitted).

■ The Railroad argues the County authorized and intended to place the road-base material on the tracks, and thus, committed a taking. However, the uncontroverted summary judgment evidence showed that the County only authorized the road-maintenance crew to place the road-base material on the roads, not on the tracks. Uncontroverted evidence also demonstrates that the County did not intend or authorize the road-maintenance crew to cause damage to the Railroad's track. *See also Weber*, 219 S.W.2d at 71

("There was no authorization or necessity for [government employees] to cause damage to adjoining property. . . . ").

In *Weber*, the state employees, while performing maintenance of the highway unintentionally and without authorization burned the grass along the shoulders of the highway near the leased premises of the plaintiff, destroying a substantial portion of the plaintiff's hay crop. *Id.* at 70–71. The supreme court concluded the spreading of the fire "was purely and solely the result of negligence; in no conceivable way can it be said that the hay crop was taken or damaged for public use." *Id.* at 71. The Railroad attempts to distinguish *Weber* and argues the placement of the road-base material was an authorized, consequential act of performing road maintenance; whereas, in *Weber*, the burning of the hay crop was not a consequential act of performing road maintenance, or authorized. *See id.* We disagree. Just like *Weber*, a road-maintenance crew committed a negligent act in the course of their work, where the County did not authorize, or intend, to cause damage to property. *Id.* at 71. The negligent burning of hay is no more consequential than the negligent laying of road-base material on the tracks or the road crew's negligent failure to remove the road-base material from the tracks. The road crew's placement of the road-base material on the tracks, and the failure to remove the road-base material from the tracks, caused damage that the county did not authorize or intend to occur.

The Railroad also argues that *English* is not applicable to its inverse condemnation claim. In *English*, county employees spilled diesel fuel on the ground while preparing the county's trucks to lay asphalt; the diesel fuel flowed from government-owned property to privately-owned, adjacent property. *English*, 989 S.W.2d at

371–72. The court held that because no evidence existed that "the County intended, authorized, or even know of the migration" and because the "migration of the diesel onto English's property was neither authorized nor necessary," a taking cause of action did not exist. *Id.* at 373–74. The Railroad argues that in contrast to *English*, here, the road-maintenance crew intended to spread the road-base material over the tracks.

We disagree. Just as the governmental entity in *English* did not intend or authorize the damage the diesel fuel caused to English's property, the County here did not intend or authorize the damage the road-base material caused to the Railroad's tracks. *Id.* at 373. We resolve the Railroad's first issue against it.

## 2. Negligence

In its second issue, the Railroad argues the trial court erred in granting summary judgment on its negligence claim because the County waived sovereign immunity under the Act. TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.021–.029 (Vernon 2005). More specifically, it asserts immunity was waived because the negligence claim is for damages arising from the use of a motor vehicle and thus falls under one of the Act's limited exceptions for property damage caused by the operation of a motor vehicle. *Id.* § 101.021.

Sovereign immunity insulates the state from money damages sought in lawsuits. *Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 853 (Tex.2002). Two principles are incorporated in the sovereign immunity doctrine: immunity from suit and immunity from liability. *Id.* Immunity is only waived when the legislature has mandated it. *Id.* The policy behind sovereign immunity is that if the state was "liable for every tortious act of its agents ... in the performance of their official duties, there would result a serious impairment of the public service and the necessary functions of government would be hampered." *Weber,* 219 S.W.2d at 72.

Nevertheless, the legislature has created a limited waiver of immunity from liability and from suit for certain claims falling within the Act. TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.021–.029. The Act states that the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

*Id.* § 101.021.

The legislature has not defined what the word "use" encompasses. *See id.* The court has defined use as " 'to put or bring into action or service; to employ for or apply to a given purpose.' " *Dallas Area Rapid Transit v. Whitley,* 104 S.W.3d 540, 542 (Tex.2003) (quoting *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg,* 766 S.W.2d 208, 211 (Tex.1989)).

In this case, the focus is whether damages resulted directly from the negligent use of motorized equipment. Regarding this issue, the Texas Supreme Court has stated:

We have consistently required a nexus between the operation or use of the

motor-driven vehicle or equipment and a plaintiff's injuries. This nexus requires more than mere involvement of property. Rather, "the [vehicle]'s use must have actually caused the injury." Thus, as with the condition or use of property, the operation or use of a motor vehicle "does not cause injury if it does no more than furnish the condition that makes the injury possible."

*Whitley*, 104 S.W.3d at 543.

To the extent the Railroad is seeking damages actually caused by derailment, we previously concluded those damages were not within the Act's waiver of immunity because the motor driven equipment did no more than the furnish the condition that made the injury possible. *Hunt County*, 2004 WL 1178609, at *3. However, we determined that the Railroad's pleadings were broad enough to include a claim for damages actually caused by use of the motor-driven vehicle and equipment, including damages to rails or the crossing caused by use of the motor-driven vehicle. *Id.* at *3–4.

■ While the Railroad contends its damages consists of damages to the tracks, the summary judgment record indicates those damages were caused by the train derailment, not directly by the motor-driven vehicles while placing the road-base material on the tracks. Even the Railroad's brief admits that no damages would have occurred to the track had the Railroad been properly notified before the train reached the crossing. *See also id.* at *3 (motor-driven equipment only furnished the condition that led to injury).

■ Although the Railroad argues its damages resulted from the County's use of a motor vehicle to put the road-base material on the tracks, it ignores the fact that a nexus must exist between the plaintiff's property damage and the use of the motor vehicle. *Whitley*, 104 S.W.3d at 540. This nexus is not satisfied when the motor vehicle use only furnishes the condition that leads to injury. *Id.* The County's use of a motor-driven vehicle or equipment to place road-base material onto the tracks created the condition that led to the train's derailment and the Railroad's damages. However, it was the train's encounter with the road-base material that caused the damages, not the County's direct use of any motor-driven vehicles or equipment.

The Railroad also alleges that *English* does control its negligence claim. (In addition to his inverse condemnation claim, English brought a negligence claim as well. *English*, 989 S.W.2d at 371.) Unlike his inverse condemnation claim, the Fort Worth Court of Appeals did rule in favor of English for his negligence claim, holding that "[t]he trucks were in use because they were being prepared to transport and release asphalt onto county roads. Coating the truck beds with diesel was part of the County's overall road maintenance operation." *Id.* at 375–76. In this case, however, the County's motor vehicles were not in direct use. When the Railroad's train encountered the road-base material, Hunt County's crew had long since (about four hours) ceased using the motor vehicle. The Fort Worth Court of Appeals only held that the trucks were in use. *Id.* at 375; *see, e.g., Hunt County*, 2004 WL 1178609, at *3. The court did not hold that a sufficient nexus existed between the use and the injury. *English*, 989 S.W.2d at 375; *see, e.g., Hunt County*, 2004 WL 1178609, at *3. We resolve the Railroad's second issue against it.

## Conclusion

We conclude that the trial court properly granted summary judgment for Hunt County on the Railroad's inverse condem-

nation and negligence claims. We affirm the trial court's judgment.