**Reversed and Rendered and Memorandum Opinion filed November 30, 2015.**



In The

# 𝕱𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 𝕮𝔬𝔲𝔯𝔱 𝔬𝔣 𝕬𝔭𝔭𝔢𝔞𝔩𝔰

## NO. 14-14-00818-CV

**THE CITY OF HOUSTON, Appellant**

**V.**

**KELLEY STREET ASSOCIATES, LLC, Appellee**

**On Appeal from the 295th District Court
Harris County, Texas
Trial Court Cause No. 2013-36796**

## M E M O R A N D U M    O P I N I O N

The City of Houston appeals an order denying its plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (Vernon Supp. 2015) (permitting interlocutory appeal from an order that "grants or denies a plea to the jurisdiction by a governmental unit"). The City contends that the trial court erred by denying its plea to the jurisdiction based on governmental immunity. We reverse and render judgment dismissing appellee Kelley Street Associates, LLC's

suit against the City for lack of subject matter jurisdiction.

## BACKGROUND

We outline the facts based on the pleadings and evidence presented in the light most favorable to Kelley as the nonmovant below.

A utility and maintenance worker employed by the City, John Zenn, was dispatched to 5825 Kelley Street on October 2, 2012, because there was flooding in the area. When Zenn and co-worker Jarrad Newsome arrived, "the street was flooded" and "there was water everywhere." Zenn and Newsome first "cut off valves" to "shut off the water" so they could make repairs. They evaluated the situation and determined that the "wheel valve was bad" and "needed gaskets."

To access the wheel valve for repairs, Zenn had to use a backhoe, which is "a motor like vehicle," to lift up the concrete slab of the sidewalk around the meter; the wheel valve was near the meter and supplied water to the meter. Zenn also used the backhoe to load the concrete pieces onto a dump truck for removal. The backhoe was not used to do anything else.

After the concrete was lifted and the area was opened up, Zenn and Newsome first "took shovels and dug the meter box out, dug down to the meter" because "the meter box was still covered." Zenn had to dig further using a shovel to remove the wheel valve. When Zenn took off the wheel valve in order to start repairs, a two-inch wide pipe was exposed "sideways." Zenn used pipe wrenches, a crescent wrench, a screwdriver, and an open-end backup wrench to replace the "nut and bolts, the gasket, the wheel valve itself, and a nipple that goes to it." After Zenn made the repairs, he reconnected the wheel valve to the two-inch pipe. Zenn and Newsome then "put everything back" and covered the area back up.

Zenn and Newsome were dispatched a second time on October 4, 2012,

2

because water still was leaking. They went back, dug everything up again, "tracked the line and replaced it with [a] full two-inch circle round" using a "[f]ive-eighth socket, ratchet."

Kelley sued the City on June 21, 2013, alleging that its office building was damaged by flooding after the City repaired a water meter and valves in front of its office building located on 5825 Kelley Street. Kelley alleged that City employees used a backhoe in the "course of making the repairs." It alleged that, in using the backhoe, the City employees "loosened debris, rocks and dirt that were dislodged into the domestic water main and thus into the plumbing system of the Kelley Street Building. These materials caused immediate and substantial damage to such system, resulting in a failure of the system, flooding of the building, and damage to the building, its fixtures and contents."

Kelley further alleged that City personnel breached the duty of reasonable care by the "negligent, careless and reckless operation of the [backhoe] . . . . Specifically, the backhoe was operated in a manner that failed to prevent the introduction of debris, rocks and dirt into the water main." According to Kelley, "[s]uch negligent, careless and reckless operation of a motor vehicle and equipment proximately caused the damages described above . . . ." Kelley alleged that the backhoe operated by City employees was "the only source of any disruption or activity that could dislodge debris, rocks and dirt into the plumbing system of the Kelley Street Building." Kelley alleged that the City is liable for damages pursuant to statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (Vernon 2011).

The City filed its answer on July 18, 2013, asserting a general denial and pleading governmental immunity from (1) "suit in bar to all of the claims by" Kelley; (2) "liability as an affirmative defense to [Kelley]'s claims;" and (3) "suit

for any claims resulting from the alleged actions of its agents, servants or employees where such agent, servant or employee is entitled to official immunity." The City also pleaded that Kelley's "claims are barred by and/or do not fall within the waiver of Chapter 101 of the Texas Civil Practice and Remedies Code."

The City filed a plea to the jurisdiction on March 21, 2014, alleging that it is entitled to a dismissal of Kelley's claims because governmental immunity is not waived pursuant to Texas Civil Practice and Remedies Code section 101.021 in this case. The City argued that, based on the facts in this case, Kelley cannot show that there is a nexus between the operation or use of a motor-driven vehicle or motor-driven equipment and the alleged damages as is required to establish a waiver of immunity. The City contended that (1) it did not use motor-driven equipment for "excavation and repair of the main/meter line" and made repairs only with hand tools; (2) it was "impossible for debris to enter the main/meter from [the City]'s use of the backhoe — the main was not accessed until well after the backhoe had removed the sidewalk and been shut down;" and (3) the use of the backhoe merely created a condition that later led to damages. The City attached Zenn's deposition testimony and a photograph of the repair site to its plea to the jurisdiction.

Kelley filed a response to the City's plea on May 13, 2014, contending that the express legislative waiver of immunity applies in this case because the damages to Kelley's building arose from the use of the backhoe, and, "[a]t the very least, there is a fact issue regarding the existence of the causal nexus." Kelley contended that the City "used a backhoe and other tools to make the repair and dislodged rocks, dirt and other debris into the domestic water main that entered the plumbing system of Kelley['s] . . . building. The rocks, dirt and other debris damaged the flush valves" and caused flooding and damage throughout the

4

building. Kelley attached excerpts from Zenn's, Newsome's, and City employee Michel Thelus's deposition testimony; Kelley also attached an affidavit from plumber John Moore, who was called by Kelley to "assess the cause of the flooding water in the building, and to propose any necessary plumbing repairs."

The City filed a reply in support of its plea on May 15, 2014, again arguing that the evidence in this case "conclusively proves there is no causal nexus – no proximate cause – between [the City]'s workers' use of a backhoe and the flooding in [Kelley]'s building."

The trial court signed an order denying the City's plea to the jurisdiction on October 3, 2014. The City filed a timely notice of appeal.

## STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004); *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 637 (Tex. 1999). A plea questioning the trial court's jurisdiction raises a question of law that is reviewed *de novo*. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007).

A plea to the jurisdiction can challenge either the pleadings or the existence of jurisdictional facts. *See Miranda*, 133 S.W.3d at 226-27.

When a plea to the jurisdiction challenges a plaintiff's pleadings, the determination pivots on whether the pleader has alleged sufficient facts to demonstrate the court's subject matter jurisdiction over the matter. *Id*. We construe the pleadings liberally in favor of the plaintiff and look to the pleader's

5

intent. *City of Waco v. Kirwan*, 298 S.W.3d 618, 621 (Tex. 2009). If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Miranda*, 133 S.W.3d at 226-27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id*. at 227.

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, even where those facts may implicate the merits of the cause of action. *Kirwan*, 298 S.W.3d at 622. If the evidence creates a fact issue as to the jurisdictional issue, then it is for the factfinder to decide. *Id*. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id*. In considering this evidence, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id*.

## ANALYSIS

The City argues that the trial court erred by denying its plea to the jurisdiction because there is no waiver of governmental immunity under the Texas Tort Claims Act in this case, and, therefore, the trial court lacks subject matter jurisdiction. According to the City, undisputed evidence establishes that there was no causal nexus between the use of motor-driven equipment and Kelley's damages.

Immunity from suit deprives a trial court of subject matter jurisdiction. *See City of Houston v. Williams*, 353 S.W.3d 128, 133 (Tex. 2011). Governmental immunity protects political subdivisions of the state, including cities, from lawsuits

6

for money damages unless such immunity has been waived.  *See Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006).  When governmental immunity is waived by statute, the legislature must use clear and unambiguous language indicating its intent do so.  *See Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 838 (Tex. 2010); *Harris Cty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009).

The Texas Tort Claims Act provides a limited waiver of governmental immunity.  *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001-.109. (Vernon 2011 & Supp. 2014); *Miranda*, 133 S.W.3d at 224; *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001); *City of Houston v. Ranjel*, 407 S.W.3d 880, 888 (Tex. App.—Houston [14th Dist.] 2013, no pet.).  Section 101.021 provides:

> A governmental unit in the state is liable for:
>> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>>> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>>> (B) the employee would be personally liable to the claimant according to Texas law; and
>> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code Ann. § 101.021.  The City does not dispute that the backhoe is a motor-driven vehicle or motor-driven equipment.  *See id*. § 101.021 (1)(A).

The City contends on appeal that, in order to plead a valid waiver of

governmental immunity, Kelley not only must show that a motor-driven vehicle or equipment was used or operated, but Kelley also must demonstrate that a nexus exists between the operation or use of the motor-driven vehicle or equipment and Kelley's alleged injuries. The City contends there was no nexus between the City's use of the backhoe and Kelley's alleged flooding damages because (1) the backhoe was used only to remove the concrete sidewalk; (2) the City used only hand tools for excavation and repair of the water line; (3) it was "impossible for debris to enter the main/meter from [the City]'s use of the backhoe because the water line was not accessed until well after the backhoe had removed the sidewalk and been shut down;" and (4) the backhoe did no more than furnish the condition that made the alleged damages possible in this case.

Kelley responds that the trial court correctly denied the City's plea to the jurisdiction because "[t]here is a sufficient nexus between the City's use of a backhoe and the resulting property damage." Kelley contends that removing the concrete sidewalk with the backhoe was a necessary part of the repair because "the water main could not have been reached without excavating the location." Kelley also contends that the backhoe "dislodged the dirt, rocks and other debris that could then enter the water main." According to Kelley, Zenn and Newsome "acknowledged that the use of the backhoe dislodged or contributed to the dislodging of the debris that entered the pipe;" and this in turn damaged the plumbing system in Kelley's office building. Kelley contends that, contrary to the City's assertion, "in this case, the backhoe is not merely a 'setting'" but the use of the backhoe was an integral part of the repair.

The supreme court has "consistently required a nexus between the operation or use of the motor-driven vehicle or equipment and a plaintiff's injuries" under the Texas Tort Claims Act. *See Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d

8

540, 543 (Tex. 2003); *Tex. Nat. Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex. 2001); *LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992). This nexus requires more than mere involvement. *Whitley*, 104 S.W.3d at 543; *Dallas Cty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998).

For liability to attach, the use of a motor-driven vehicle or equipment "'must have actually caused the injury.'" *See Whitley*, 104 S.W.3d at 543 (quoting *White*, 46 S.W.3d at 869). The "operation or use of a motor vehicle 'does not cause injury if it does no more than furnish the condition that makes the injury possible.'" *Id.* (quoting *Bossley*, 968 S.W.2d at 343). Thus, if the backhoe merely furnished the condition that made Kelley's alleged damages possible, then the legislature has not waived immunity under the Tort Claims Act.

Here, the undisputed jurisdictional evidence establishes that the City's governmental immunity has not been waived under the Texas Tort Claims Act. This is so because the use or operation of the backhoe did no more than furnish a condition that made the alleged damages in this case possible.

Zenn testified in his deposition that the backhoe was used only to remove the concrete sidewalk slab around the meter, and then to load up the concrete pieces onto a dump truck. Zenn testified that the backhoe was not used to do anything else. Zenn stated that the backhoe could not have been used to excavate the wheel valve because of the "amount of space to work in. A backhoe would be -- would defeat the purpose." Zenn stated that the backhoe was not used for "digging on the meter;" he and Newsome "took shovels and dug the meter box out, dug down to the meter" because "the meter box was still covered." Zenn then had to dig further using a shovel to remove the wheel valve and start repairs on it. Zenn and Newsome used only hand tools to dig out and remove equipment and make the

necessary repairs.

Further, Zenn testified that only after he used hand tools to remove the wheel valve was a two-inch pipe exposed. Zenn acknowledged that, "if there's concrete or dirt or rocks, that the — that have been dislodged by the backhoe and haven't been picked up," it is possible that "rocks or debris could then fall into the pipe."

Kelley contends "[t]here is a sufficient nexus between the City's use of a backhoe and the resulting damage" because the backhoe "dislodged the dirt, rocks and other debris that could then enter the water main." We reject Kelley's contention. Even if the backhoe dislodged rocks, dirt, and debris, the operation and use of the backhoe did not cause the rocks, dirt, and debris to enter the open pipe. When the City's workers ceased using the backhoe, the wheel valve had not yet been removed and the pipe had not yet been exposed for any rocks or debris to enter. Zenn had to remove the wheel valve using hand tools, which in turn exposed the pipe and created an opportunity for entry of rocks or debris. Thus, any dislodged rocks and debris could enter the pipe because the pipe was exposed by Zenn when he removed the wheel valve; any dislodged rocks or debris did not enter the pipe because the backhoe was being used or operated.

Here, the use or operation of the backhoe did no more than furnish a condition that made Kelley's alleged damages possible. *See Whitley*, 104 S.W.3d at 543; *see also Dallas, Garland & Ne. R.R. v. Hunt Cty.*, 195 S.W.3d 818, 822-23 (Tex. App.—Dallas 2006, no pet.) ("The County's use of a motor-driven vehicle or equipment to place road-base material onto the tracks created the condition that led to the train's derailment and the Railroad's damages. However, it was the train's encounter with the road-base material that caused the damages, not the County's direct use of any motor-driven vehicles or equipment."). There is no nexus

between the use or operation of the backhoe and the alleged damages in this case. Our conclusion is consistent with the Texas Supreme Court's instruction that the Tort Claims Act's waiver of immunity is a limited one. *See Miranda*, 133 S.W.3d at 224; *Miller*, 51 S.W.3d at 587; *LeLeaux*, 835 S.W.2d at 51.

Accordingly, we hold that the undisputed evidence establishes that the City's governmental immunity has not been waived and that the trial court erred by denying the City's plea to the jurisdiction.

## CONCLUSION

We reverse the trial court's judgment and render judgment dismissing Kelley's suit against the City for want of subject matter jurisdiction.


/s/    William J. Boyce
        Justice


Panel consists of Justices Boyce, McCally and Donovan.