**REVERSE, RENDER, and DISMISS; Opinion Filed October 10, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01443-CV

### CITY OF LANCASTER, TEXAS, Appellant
### V.
### DAVID LAFLORE, INDIVIDUALLY AND
### AS NEXT FRIEND OF I.B. AND L.L.L., MINOR CHILDREN, Appellees

**On Appeal from the County Court at Law No. 1
Dallas County, Texas
Trial Court Cause No. CC-16-04888-A**

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Lang-Miers
Opinion by Justice Lang-Miers

David LaFlore sued the City of Lancaster after he and his children were injured in a single-car accident at the intersection of Elm and 6th Streets in Lancaster. LaFlore alleged that as he drove southbound on Elm Street, he ran over a manhole with a partially dislodged cover. The City filed a plea to the jurisdiction and motion to dismiss, arguing that governmental immunity barred LaFlore's claims. The trial court denied the City's plea and motion, and the City appeals. The main issue is whether the partially dislodged manhole cover is a "special defect." We conclude that it is not, and we reverse the trial court's order denying the City's plea to the jurisdiction and render judgment dismissing LaFlore's claims for lack of subject-matter jurisdiction.

BACKGROUND

LaFlore was driving on Elm Street when he struck a partially dislodged manhole cover and lost control of his car. His children I.B. and L.L.L. were passengers in the car. The car made "a 360 degree spin" and hit a tree. LaFlore and his children were injured. LaFlore sued the City seeking damages for medical expenses, physical pain and suffering, physical impairment, loss of earnings, and property damage. The City answered and filed a plea to the jurisdiction, arguing that (1) the partially dislodged manhole cover was not a "special defect"; and (2) the City had no knowledge of the condition at the time of LaFlore's accident.

The City filed three affidavits in support of its plea. A police report from LaFlore's accident and photographs of the manhole cover and the roadway were attached to the affidavit of the City's Secretary and custodian of records. The police report includes the officer's "narrative opinion of what happened":

> Operator of Unit #1 [LaFlore] stated he was south bound in the 600 block of N. Elm St. Operator stated that manhole cover in the middle of the intersection was dislodged and sticking up. Operator advised he struck the manhole cover and lost control of his vehicle striking a row of hedges.

Wayne McCurley, an employee of the City's Water/Wastewater Department, also provided an affidavit. McCurley stated that as part of his job, he maintains, inspects, and replaces manholes and their covers within the City. He explained that:

- He has personal knowledge of the layout and general conditions of the intersection at North Elm Street and 6th Street in the City;

- "There is a manhole located in the center of the [i]ntersection along the center strip of North Elm Street between two opposing lanes of traffic";

- The manhole is round and measures approximately two feet wide in diameter;

- The posted speed limit for both north and southbound lanes of North Elm Street through and around the intersection with 6th Street is 30 miles per hour;

- He inspected the scene of LaFlore's accident on September 25, 2014;

- During his inspection, the manhole cover was found on the front porch of a building located south of the intersection;

- He "observed drag marks in the pavement of the road headed south down North Elm Street and towards the location where [he] found the [m]anhole cover and where [LaFlore's] car stopped" after the accident;

- The three pictures attached to his affidavit are "accurate portrayals of the scene" as he found it after replacing the manhole cover; and

- "Prior to being dispatched in response to a missing manhole cover at the [i]ntersection on September 25, 2014, I had no knowledge of any damage done to the [m]anhole or to its cover and had no knowledge that the [m]anhole cover was missing or dislodged."

Andrew Waits, the Superintendent of the City's Water/Wastewater Department, submitted the third affidavit in support of the City's plea. Waits stated that:

- He supervises the activities of the Water/Wastewater Department, including the maintenance, inspection, and replacement of manholes and their covers within the City;

- He monitors and receives reports, calls, or other notices of damage to manholes in the City and the damage or theft of manhole covers in the City;

- As part of its responsibilities, the Department maintains the manhole covers in the City's water and sewer systems. This maintenance includes replacing damaged or missing manhole covers;

- He has personal knowledge of the layout and general conditions of the intersection of North Elm and 6th Street;

- There is a manhole in the center of the intersection along the center strip of North Elm Street between two opposing lanes of traffic;

- The manhole is round and approximately two feet wide in diameter;

- The posted speed limit for both north and southbound lanes of North Elm Street through and around the intersection with 6th Street is 30 miles per hour;

- The Department was called to respond to a missing manhole cover at the intersection on September 25, 2014, and McCurley was dispatched;

- Prior to the September 25, 2014 notice, the City had "received no reports, calls, or other notices that the [m]anhole's cover was missing, dislodged, or defective in any way," or "of any accident caused by or related to the [m]anhole or its cover."

After a hearing, the trial court denied the City's plea and motion. This appeal followed.

## APPLICABLE LAW AND STANDARD OF REVIEW

Governmental immunity protects political subdivisions of the State, including cities, from lawsuits for money damages unless immunity has been waived. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006) (op. on reh'g). The Texas Tort Claims Act ("TTCA") provides a limited waiver of governmental immunity for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (West, Westlaw through 2017 1st C. Sess.).

The TTCA imposes different standards of care depending on whether the condition is a premise defect or a special defect. TTCA § 101.022. If a claim arises from a premise defect, "the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property." *Id.* § 101.022(a). "That duty requires the City to not injure a licensee by willful, wanton or grossly negligent conduct; the City must use ordinary care to warn a licensee, or to make reasonably safe a dangerous condition of which the City is aware . . . and the licensee is not." *City of Austin v. Rangel*, 184 S.W.3d 377, 383 (Tex. App.—Austin 2006, no pet.).

If the condition is a special defect, the governmental unit owes the duty that a private person owes to an invitee. *See* TTCA § 101.022(b) ("The limitation of duty in this section does not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads, or streets . . . ."); *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010) (per curiam) (if condition is special defect, TTCA applies same duty of care as to invitee). "With respect to an invitee, the City owes a higher duty to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition of which the City is or reasonably should be aware." *Rangel*, 184 S.W.3d at 383.

–4–

Whether a condition is a special defect is a question of law that we review de novo. *Tex. Dep't of Transp. v. Perches*, 388 S.W.3d 652, 655 (Tex. 2012) (per curiam). The TTCA does not define "special defect," but "likens it to conditions 'such as excavations or obstructions on highways, roads, or streets.'" *Hayes*, 327 S.W.3d at 116 (quoting TTCA § 101.022(b)). "A condition must therefore be in the same class as an excavation or obstruction on a roadway to constitute a special defect." *Perches*, 388 S.W.3d at 655. "'[T]he class of special defects contemplated by the statute is narrow.'" *Id.* (quoting *Hayes*, 327 S.W.3d at 116). As the supreme court has explained,

> The [TTCA] does not define "special defect," and so, "[u]nder the ejusdem generis rule, we are to construe 'special defect' to include those defects of the same kind or class as the ones expressly mentioned"—that is, excavations and obstructions on roadways. *Cnty. of Harris v. Eaton,* 573 S.W.2d 177, 179 (Tex. 1978). *Webster's* defines an excavation as a cavity and an obstruction as an impediment or a hindrance, WEBSTER'S THIRD NEW INT'L DICTIONARY 791, 1559 (1981), but not every hole or hindrance is special; otherwise, the statutory limitation on the government's duty would amount to little. We have described the class of conditions intended by the statute as those which, because of their size or "some unusual quality outside the ordinary course of events," *City of Dallas v. Reed,* 258 S.W.3d 620, 622 (Tex. 2008) (per curiam), pose "'an unexpected and unusual danger to ordinary users of roadways.'" *Texas Dep't of Transp. v. York,* 284 S.W.3d 844, 847 (Tex. 2009) (per curiam) (quoting [*State Dep't of Highways v.*] *Payne*, 838 S.W.2d [235,] 238 [(Tex. 1992)]).

*Reyes v. City of Laredo*, 335 S.W.3d 605, 607 (Tex. 2010) (per curiam).

When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must review the relevant evidence to determine whether a fact issue exists. *Hayes*, 327 S.W.3d at 116 (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). The plaintiff bears the burden to allege facts demonstrating jurisdiction, and we construe the pleadings liberally in the plaintiff's favor. *Id.* If the evidence raises a fact question on jurisdiction, the trial court cannot grant the plea, and the issue must be resolved by the trier of fact. *Id.* On the other hand, if the evidence is undisputed or fails to raise a fact question, the trial court

must rule on the plea as a matter of law. *Id.* We review de novo a trial court's ruling on a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 228.

**DISCUSSION**

**A. Special Defect**

In its first issue, the City contends the trial court erred by concluding that a partially dislodged manhole cover was a special defect when it did not prevent the ordinary use of a driver's lane of traffic. Citing *City of Denton v. Paper*, 376 S.W.3d 762, 765 (Tex. 2012) (per curiam), the City argues that because the manhole was limited in its width and a driver could avoid it without leaving the roadway, a manhole with a partially dislodged cover is not in the same class as an excavation or obstruction on a roadway. In that case, a bicyclist was injured when her bicycle's front wheel encountered a depression or sunken area in the roadway a few inches deep where the city had installed a sewer tap. *Id.* at 763–64. The bicyclist was pitched over the handlebars, landing on her chin and breaking several teeth. *Id.* at 764. The court explained that to determine whether a special defect exists, "'the central inquiry is whether the condition is of the same kind or falls within the same class as an excavation or obstruction.'" *Id.* at 765 (quoting *Tex. Dep't of Transp. v. York*, 284 S.W.3d 844, 847 (Tex. 2009) (per curiam)). There are "several helpful characteristics" in "determining whether a particular condition is like an excavation or obstruction and therefore a special defect," including:

> (1) the size of the condition; (2) whether the condition unexpectedly and physically impairs an ordinary user's ability to travel on the road; (3) whether the condition presents some unusual quality apart from the ordinary course of events; and (4) whether the condition presents an unexpected and unusual danger.

*Id.* The court concluded that "the sunken area or pot hole here, ranging from two inches to a few inches more at its deepest point and located in the center of one lane of traffic is not the excavation or obstruction contemplated by the statute." *Id.* at 765–66. The sunken area "did not physically impair Paper's ability to travel." *Id.* at 766. And "the sunken area could have been avoided without

–6–

leaving the roadway or entering the opposing lane." *Id.* The court contrasted the "abnormally large hole in the road" found to be a special defect in *County of Harris v. Eaton*, 573 S.W.2d 177 (Tex. 1978):

> *Eaton* involved an abnormally large hole in the road. This hole varied from six to ten inches in depth and was four- to nine-feet wide, extending over ninety percent of the width of the highway. *Eaton*, 573 S.W.2d at 178. Indeed, we commented that the condition "reached the proportions of a ditch across the highway." *Id.* at 179. We further observed that "one could not stay on the pavement and miss it," implicating another special-defect consideration—the condition unexpectedly and physically impaired the vehicle's ability to travel on the roadway. *Id.* Upon encountering the "ditch" in *Eaton*, the vehicle flipped coming to a rest on its roof. *Id.* at 178.

*Paper*, 376 S.W.3d at 766.

LaFlore, in turn, relies on *Rangel* to support his contention that the partially dislodged manhole cover was a special defect. Rangel, a pedestrian attending a festival in downtown Austin, came to a blocked street. *Rangel*, 184 S.W.3d at 380. A uniformed police officer directed Rangel to a sidewalk. *Id.* Rangel stepped into an uncovered water meter box on the sidewalk. *Id.* She had not noticed the hole and did not see any warning signs in the area. *Id.* She suffered knee and ankle injuries that required surgery. *Id.* In concluding the uncovered box was a special defect, the court reasoned:

> [T]he plea to the jurisdiction evidence shows that the uncovered meter box on the sidewalk was an eleven inch opening that was located approximately twenty feet from the curb and two feet from the building adjacent to the sidewalk. There is no evidence of who removed the meter's lid or for how long it had been missing before Rangel was injured.

> A normal user of the roadway in this situation would be a pedestrian on the sidewalk, as Rangel was at the time she stepped into the open meter box. An average pedestrian would not expect to encounter a hole of this size on a downtown public sidewalk. Consequently, we hold that the uncovered meter box was a special defect of the kind and class covered by the [TTCA] and that it posed an unexpected and unusual danger to ordinary users of the sidewalk.

*Id.* at 384. LaFlore relies on *Rangel* in support of his argument that an "uncovered and/or dislodged manhole cover in the middle of the street or roadway is . . . recognized by law as a 'special defect.'"

Neither party refers us to a special or premise defect case involving a missing or dislodged manhole cover and a plaintiff driving an automobile. There are numerous cases, like *Rangel*, where a pedestrian has been injured by falling into an uncovered or defectively-covered manhole, or like *Paper*, where a plaintiff encountered a manhole while riding a bicycle or motorcycle. In these cases, several courts have concluded that uncovered or defectively-covered manholes are "special defects." *See, e.g., City of Houston v. Kiju Jo*, 359 S.W.3d 895, 901 n.7 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (collecting cases). Other courts have concluded that they are not. *See, e.g., City of Arlington v. S.C.*, No. 02-17-00002-CV, 2017 WL 3910992, at *3–5 (Tex. App.—Fort Worth Sept. 7, 2017, no pet.) (mem. op.) (collecting cases involving defectively-covered holes). We have concluded that a pothole ten feet wide and five to six inches deep, extending the width of one traffic lane, was a special defect. *City of Weston v. Gaudette*, 287 S.W.3d 832, 838–39 (Tex. App.—Dallas 2009, no pet.) (injury to motorcyclist). But an open manhole in a grassy area near a public sidewalk, in which a pedestrian was injured, was not. *Purvis v. City of Dallas*, No. 05-00-01062-CV, 2001 WL 717839, at *2–3 (Tex. App.—Dallas June 27, 2001, no pet.) (not designated for publication). Although the question is one of law, courts consider each case's "unique facts" in determining whether the alleged condition is of the same kind or class as an excavation or roadway obstruction. *See Denton Cty. v. Beynon*, 283 S.W.3d 329, 331–32 & n.15 (Tex. 2009). Nonetheless, the statutory definition of "special defect" is narrow, and the supreme court has "decline[d] to expand the statutory definition beyond its terms." *Id.* at 330, 333.

"[N]ot every hole or hindrance is special." *Reyes*, 335 S.W.3d at 607. A sister court recently concluded that a missized manhole cover in a city sidewalk was not a special defect. *City of Arlington*, 2017 WL 3910992, at *5. In that case, the manhole cover rotated vertically when the plaintiff stepped on it. *Id.* at *1. The plaintiff slipped straight down onto the cover's upright edge and was seriously injured. *Id.* The court cited the supreme court's directive that "'we are to

construe 'special defect' to include those defects of the same kind or class' as excavations or obstructions." *Id.* at *2 (quoting *Eaton*, 573 S.W.2d at 179). The court then discussed cases which "tacitly accepted that a defective cover over a hole satisfies the excavation 'class or kind' test." *Id.* at *3–4. In those cases, however, the courts held there was no "special defect" because the condition was too far away from the roadway for ordinary users to encounter it. *See id.* at *4. The court contrasted those cases with its own decision in *Peterson v. City of Fort Worth*, 966 S.W.2d 773 (Tex. App.—Fort Worth 1998, no pet.). *City of Arlington*, 2017 WL 3910992, at *5. The court described its reasoning in *Peterson*:

> [W]e held that a broken steel plate over part of a shallow drainage channel running beneath a city sidewalk was not a special defect. [*Peterson*, 966 S.W.2d at 774, 776]. There, we rejected the plaintiff's invitation to "bootstrap an otherwise basic premise defect, the cracked steel plate, with the deliberately created, permanent, and otherwise nondefective channel in order to find that the entire condition amounts to an excavation special defect." *Id.* at 776. Elaborating, we noted that the "real defect at issue" was the broken plate, "not the channel," which was itself "permanent in nature and not of some unusual or unexpected character." *Id.*

*City of Arlington*, 2017 WL 3910992, at *5. Relying on *Peterson*, and noting that "[e]ven though the manhole cover here certainly seems to meet the proximity test and, on the day of [the plaintiff's] accident, was a danger certainly to hypothetical ordinary users," the court concluded, "our precedent and the supreme court's clear direction to construe the [TTCA] narrowly require us to hold that the manhole cover was not a special defect." *Id.* (footnote omitted). And following *City of Arlington*, the court held that a "broken, defective, and/or improperly secured" manhole cover that injured a pedestrian was not a special defect. *City of Bedford v. Smith*, No. 02-16-00436-CV, 2017 WL 4542858, at *3 (Tex. App.—Fort Worth Oct. 12, 2017, no pet.) (mem. op.).

Similarly here, the partially dislodged manhole cover is not of the same class as an excavation or obstruction. *See Paper*, 376 S.W.3d at 764. The manhole, two feet in diameter, is in the center of the road, "along the center strip" between two opposing lanes of traffic. In contrast, the pothole we determined to be a special defect in *Gaudette* covered the entire width of the traffic

lane, was approximately ten feet in diameter, and was five to six inches deep. *See Gaudette*, 287 S.W.2d at 839. And in *Eaton*, the hole in the road varied from six to ten inches in depth and was four to nine feet wide, extending over ninety percent of the width of the highway. *See Eaton*, 573 S.W.2d at 178. A driver could not stay on the pavement and miss the hole. *Id.*

In his response to the City's plea to the jurisdiction, LaFlore argued that "the manhole before this Court is not a pot-hole like condition, but rather a deep hole in the middle of a small rural two-lane road with poorly marked centerlines." In addition, the manhole's cover was "protruding" in the middle of the roadway. LaFlore also argued that in order for him to avoid "a protruding manhole cover and deep manhole in the middle of the road before this Court, his choices would be to either risk running off of the rural road with no shoulder or swerve into oncoming traffic." But the two-foot-wide manhole with its protruding cover was along the center strip of the road, not in the middle of LaFlore's lane or preventing him from following the "normal course of travel" on the road. *See Hayes*, 327 S.W.3d at 116 (quoting *Beynon*, 283 S.W.3d at 332) (bicyclist was not in "normal course of travel" when he traveled beyond barricade erected to alert travelers of closed roadway). And a manhole with a protruding cover, a "pot-hole-like condition," does not "present[ ] some unusual quality apart from the ordinary course of events." *See Paper*, 376 S.W.3d at 765–66. "Such irregularities in the roadway unfortunately are to be expected. Typically, they will not present an unusual danger to the traveler." *Id.* at 766.

Like our sister court, we conclude that "[e]ven though the manhole cover here certainly seems to meet the proximity test and, on the day of [LaFlore's] accident, was a danger certainly to hypothetical ordinary users, our precedent and the supreme court's clear direction to construe the [TTCA] narrowly require us to hold that the manhole cover was not a special defect." *City of Arlington*, 2017 WL 3910992, at *5 (footnote omitted). We sustain the City's first issue.

**B. City's Actual Knowledge**

In its second issue, the City contends the trial court erred by denying its plea to the jurisdiction because "the record demonstrates the City lacked actual knowledge of a premises defect." The City's argument is premised on its contention that the partially dislodged manhole cover is a premises defect, for which it must establish only lack of actual knowledge, rather than a special defect, for which it must establish that it did not know and should not have known of the condition. *See Reyes*, 335 S.W.3d at 606–08 (comparing knowledge standards for premise and special defects under TTCA). We have concluded that the partially dislodged manhole cover is not a special defect. Consequently, the City was required to establish only that it did not have actual knowledge of the condition. *See Hayes*, 327 S.W.3d at 117 (for premises defect claim, plaintiff must show that landowner had actual knowledge of dangerous condition at the time of plaintiff's accident).

There is no evidence that at the time of LaFlore's accident, the City knew that the manhole cover had become partially dislodged. *See id.* The City submitted evidence that the Department maintains the manhole covers in the City, including replacing damaged or missing manhole covers. The Department also monitors and receives reports, calls, or other notices of damage to manholes in the City and of damage or theft of manhole covers in the City. The Department was called to respond to a missing manhole cover at the intersection in question after LaFlore's accident, but prior to the accident, the City had "received no reports, calls, or other notices that the [m]anhole's cover was missing, dislodged, or defective in any way," or "of any accident caused by or related to the [m]anhole or its cover." The City replaced the manhole cover after the accident, and then took photographs of the cover. The photographs show that the cover was not damaged or broken and, after replacement, appeared to be flat against the street's surface. LaFlore did not controvert this evidence to raise a fact issue about the City's actual knowledge of the premises defect. *See*

*Hayes*, 327 S.W.3d at 117–18 (where no evidence showing university had actual knowledge of dangerous condition at time of accident, plaintiff failed to establish premises defect claim); *see also Rangel*, 184 S.W.3d at 385 (under higher standard for special defect, no fact issue of city's knowledge of special defect where no evidence about "how long the meter's lid had been missing, or who or what caused it to go missing"). We sustain the City's second issue.

**C. Property Damage Claims**

In its third issue, the City argues that it has not waived immunity from LaFlore's claims for property damage. The TTCA provides that a governmental unit is liable for property damage proximately caused by the wrongful act, omission, or negligence of an employee acting within his scope of employment if the property damage "arises from the operation or use of a motor-driven vehicle or motor-driven equipment" and "the employee would be personally liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1) (West, Westlaw through 2017 1st C. Sess.).

In *Dalon v. City of DeSoto*, 852 S.W.2d 530, 536 (Tex. App.—Dallas 1992, writ denied), we explained that a city does not waive immunity from claims for property damage unless the damage is caused by the negligent act or omission of a city employee and arises from the operation of motor-driven equipment. Further, "a nexus must exist between the plaintiff's property damage and the use of the motor vehicle" before immunity is waived. *Dallas, Garland & Ne. R.R. v. Hunt Cty.*, 195 S.W.3d 818, 823 (Tex. App.—Dallas 2006, no pet.). LaFlore did not plead that property damage arose from the City's operation of a motor-driven vehicle or equipment. Consequently, we sustain the City's third issue.

–12–

**CONCLUSION**

We reverse the trial court's order denying the City's plea to the jurisdiction and render judgment dismissing LaFlore's claims against the City for lack of subject matter jurisdiction.

                      /Elizabeth Lang-Miers/
                      ELIZABETH LANG-MIERS
                      JUSTICE

171443F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CITY OF LANCASTER, TEXAS,
Appellant

No. 05-17-01443-CV      V.

DAVID LAFLORE, INDIVIDUALLY
AND AS NEXT FRIEND OF I.B. AND
L.L.L., MINOR CHILDREN, Appellees

On Appeal from the County Court at Law
No. 1, Dallas County, Texas
Trial Court Cause No. CC-16-04888-A.
Opinion delivered by Justice Lang-Miers;
Justices Bridges and Francis, participating.

In accordance with this Court's opinion of this date, the trial court's "Order Denying Defendant City of Lancaster's Plea to the Jurisdiction and Motion to Dismiss" is **REVERSED** and judgment is **RENDERED** that the claims of David LaFlore, Individually and as Next Friend of I.B. and L.L.L., Minor Children, are **DISMISSED** for lack of subject matter jurisdiction.

It is **ORDERED** that City of Lancaster, Texas recover its costs of this appeal from David LaFlore, Individually and as Next Friend of I.B. and L.L.L., Minor Children.

Judgment entered this 10th day of October, 2018.